500 A.2d 110

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Gus TAYLOR, III.**

Superior Court of Pennsylvania.

Argued Dec. 13, 1984.

Filed Oct. 4, 1985.

602

Michael R. Cauley, Assistant District Attorney, Erie, for Com., appellant.

Robert A. Graci, Harrisburg, for amicus curiae.

Before SPAETH, President Judge, and CAVANAUGH, WICKERSHAM, ROWLEY, OLSZEWSKI, MONTEMURO, BECK, TAMILIA and JOHNSON, JJ.

TAMILIA, Judge:

This case was certified to the court en banc on a motion for reargument by the Commonwealth from the decision of a panel of this Court which has not been reported. This appeal arises from the Judgment of Sentence of the Erie County Criminal Court sentencing the defendant to 11½ to 23 months to the Erie County Jail on the charge of unlawful restraint,[1] four years probation for aggravated assault,[2] to be consecutive to the prison term, and two years probation for theft by unlawful taking[3] to be concurrent with the prison term. The sentence was the result of a guilty plea and plea agreement.

It is alleged by the District Attorney of Erie County that the court erred in sentencing by not providing a deadly weapon enhancement of at least 12 months because the defendant allegedly used a hunting knife during the assault. Section 303.4 of the Pennsylvania Sentencing Guidelines requires that when the current offense is one in which a deadly weapon is possessed, the court must add an additional 12 months to the lower limit of the appropriate guideline sentence range, and 24 months to the upper limit of that range before a sentence is chosen.[4]

There are discrepancies between the initial charges and the information, variations between the guilty plea and the proof at sentencing, and constitutional infirmities relating to the definition of "possession of a deadly weapon" and due process, which require dismissal of the appeal by the District Attorney of Erie County and affirmance of the sentence by the court below.

On January 12, 1983, the defendant tendered a guilty plea to the charges of aggravated assault, theft by unlawful

1. 18 Pa.C.S.A. § 2902
2. 18 Pa.C.S.A. § 2702
3. 18 Pa.C.S.A. § 3921
4. 42 Pa.C.S.A. § 9721(b) incorporating Sentencing Guidelines, 204 Pa.Code Ch. 303, adopted May 14, 1982, effective July 22, 1982; promulgated by the Pennsylvania Commission on Sentencing, pursuant to authority granted by 42 Pa.C.S.A. § 2154 (1980, Oct. 5, P.L. 693, No. 142, § 218(a), effective in 60 days).

taking, and unlawful restraint, arising from an altercation on September 19, 1982 with Belinda Watson, who had known the defendant for two years. Sentencing occurred on March 4, 1983. During the sentencing procedure, the Commonwealth produced the victim to testify the defendant held a knife to her throat and threatened her with the knife. It is this testimony upon which the Commonwealth bases its appeal and alleges error by the trial court in failing to consider defendant's possession of a deadly weapon at the time of the offenses, which would provide a basis for a weapon enhancement sentence. The Commonwealth filed motions to reconsider which were denied by the sentencing judge and, thereafter, an appeal was timely filed.

■ Defense counsel argues the trial court is endowed with broad discretion in sentencing and that the sentencing system in Pennsylvania necessitates this broad discretion in determining, among the sentencing alternatives, the range of permissible penalties and the proper sentence to be imposed. He cites as authority *Commonwealth v. Riggins,* 474 Pa. 115, 377 A.2d 140 (1977) and *Commonwealth v. Martin,* 466 Pa. 188, 351 A.2d 650 (1976). The cases cited by appellee are inapposite as the legislature, within its constitutional powers, can define crime and establish sentencing parameters. Although the legislature cannot delegate the power to make a law, it may, when necessary, confer authority and discretion in connection with execution of the law. *Commonwealth v. Cherney,* 454 Pa. 285, 312 A.2d 38 (1973); *Belovsky v. Redevelopment Authority of the City of Philadelphia,* 357 Pa. 329, 54 A.2d 277 (1947), 172 A.L.R. 953; *Keystone Trucking Corp. v. Workman's Compensation Appeal Bd.,* 40 Pa.Commw. 326, 397 A.2d 1256 (1979). The legislature may utilize establishment of administrative agencies as part of the legislative process in the tripartite system of government to regulate and control segments of society which the legislature in its wisdom deems necessary of control. *Bortz Coal Co. v. Air Pollution Commission,* 2 Pa.Commw. 441, 279 A.2d 388 (1971).

■ The Legislature may properly impose authority in a Sentencing Commission in establishing sentencing standards. The appellee alleges the Legislature (Commission), in establishing a mandatory enhancement sentence, infringes on the inherent powers of judges to exercise discretion in sentencing. This issue has long been laid to rest in the Commonwealth. The Legislature has the right to classify crimes, to designate the maximum and likewise, can name the minimum. *Commonwealth v. Wright, et al.,* 508 Pa. 25, 494 A.2d 354 (1985). The necessity or wisdom of so doing is a question for its determination. The power of determining the extent of punishment to be inflicted was not, and is not now, the subject of constitutional limitation, and the Legislature could fix the length of imprisonment upon conviction of a particular offense making, if it saw fit, the term rigid and invariable or allowing room for use of good judgment by the judge, made acquainted by the trial with the attending circumstances. *Commonwealth v. Sweeney,* 281 Pa. 550, 127 A. 226 (1924); *Commonwealth v. Glover,* 397 Pa. 543, 156 A.2d 114 (1959). Also, legislation authorizing indeterminate sentences does not violate this section (Pa. Const. Art. 5, § 1) as transforming judicial discretion to a nonjudicial board. *Commonwealth v. McKenty,* 52 Pa.Super. 332 (1912). Appellee's arguments are, therefore, without merit. The constitutionality of the creation of the Sentencing Commission, as opposed to the authority of a validly created commission, is not before us, as only the latter was briefed and argued.

■ It is clear, however, that the sentencing process is subject to the due process clause. *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 1205, 51 L.Ed.2d 393 (1977), *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). If the sentencing procedure is improper, it involves deprivation of due process. *Commonwealth v. Walker,* 286 Pa.Super. 239, 428 A.2d 661 (1981). *Compare Commonwealth v. Opara,* 240 Pa.Super. 511, 362 A.2d 305 (1976). (The due process clause applies to sentencing procedure (Spaeth, J.).) In a case involving juveniles, *In*

*the Interest of Tina Jones, et al.,* 286 Pa.Super. 574, 429 A.2d 671 (1981), in a dispositional proceeding for dependant children, which would be analogous to sentencing in a criminal procedure, this Court, Cavanaugh, J., held that enactments, providing that reports or oral testimony may be relied upon to the extent of their probative value, and that sources of information given in confidence, need not be disclosed, (Juvenile Act—42 Pa.C.S.A. § 6341(d)) was a denial of the due process right to confrontation of witnesses by the children's mother.

Having laid the foundation for our consideration, we proceed to consider the matters presented by this appeal. The issues presented in this case are:

(1) Whether or not the Commonwealth, in filing its information, chose to ignore an essential element of this crime thereby changing its character from aggravated assault with a weapon to aggravated assault without a weapon.

(2) Whether, in accepting a guilty plea to charges on a plea agreement to nol pros other counts of the information, the Commonwealth was bound by the defendant's admissions and statements as to his actions in the purported crimes, none of which implicated his possession of a deadly weapon.

(3) Whether or not the definition of possession of a deadly weapon is so legally vague as to be constitutionally impermissible.

## I.

As to the first issue, it is apparent upon a close review of the record that the charges, as they emanated from the magistrate's office, were substantially different from those finally presented to the court in the form of an information. On September 20, 1982, the criminal complaint was prepared and alleged as follows:

The defendant did intentionally, knowingly or recklessly cause serious bodily injury to Miss Belinda Watson, B/F, D.O.B. 1/18/61, who resides at 4122 Maxwell Avenue, in that he did come to the home of Belinda Watson, and

against Belinda's own will, did take Belinda from her home by threatening her with a knife that he put up to her neck, putting her life in danger and verbally threatening to kill her. . . .

The charge was aggravated assault and the magistrate indicated the applicable section was § 2702 of the Pennsylvania Crimes Code, without designating whether it was aggravated assault with intent to cause or causes serious bodily injury to another which is § 2702(a)(1), a felony of the second degree, or an attempt to cause or knowingly causes bodily injury to another with a deadly weapon which is § 2702(a)(4), a misdemeanor of the first degree. A fair reading of the complaint impels the conclusion that the defendant was charged with § 2702(a)(4), attempt to cause bodily injury to another with a deadly weapon.

The information filed by the District Attorney of Erie County on or about October 28, 1982, alleges that on or about September 19, 1982 in Erie County, the defendant at Count 4:

> . . . did attempt to cause serious bodily injury to another, or caused such injury intentionally, knowingly, recklessly under circumstances manifesting extreme indifference to the value of human life, to-wit: BELINDA WATSON, and that the said GUS TAYLOR, III did beat BELINDA WATSON with his fists numerous times about the face and body causing serious bodily injury, contusions, abrasions and a broken nose this occurring at an unknown location; thereby the said GUS TAYLOR, III did commit the crime of AGGRAVATED ASSAULT, a felony of the second degree.

The statute citation section of the information refers to 18 Pa.C.S.A. 2702, without designating the subsection number which would differentiate between aggravated assault by attempt to cause, or causes serious bodily injury and aggravated assault with a deadly weapon. The wording of Count 4 clearly alleges § 2702(a)(1), aggravated assault, an attempt to cause or causes serious bodily injury to another, a felony.

608

█ Since the District Attorney's office has the power to modify the information as it relates to the complaint (so long as the offense is substantially the same or cognate to the offense alleged in the complaint) to conform to what it perceives to be its proof or its determination of prosecutorial merit, it would appear the district attorney concluded that assault with attempt to cause serious bodily injury, without a weapon, was the proper charge in this case. *See* Pa.R.Crim.P. 225(b)(5) and *Commonwealth v. Wilkinson,* 278 Pa.Super. 490, 420 A.2d 647 (1980), *Commonwealth v. El,* 273 Pa.Super. 1, 416 A.2d 1058 (1979), *Commonwealth v. Epps,* 260 Pa.Super. 57, 393 A.2d 1010 (1978). This was also the charge of which the defendant had notice to defend, and this was the charge presented to the court. Since the proof required for subsection (a)(1) and subsection (a)(4) is substantially different and the penalties involved, likewise, are substantially different, the defendant cannot be charged with one subsection and be presented with proof or allegations of a different subsection at trial without amendment approved by the defendant. *Commonwealth v. Hertzog,* 492 Pa. 632, 425 A.2d 329 (1981). Aggravated assault, § 2702(a)(4) is not a lesser included offense of aggravated assault, § 2702(a)(1). *Commonwealth v. Ritchey,* 313 Pa. Super. 238, 459 A.2d 828 (1983). If, upon a conviction or a plea, the court imposed a sentence relating to one subsection of the Crimes Code, when a different subsection carrying a different penalty was proved, this in effect would be an illegal sentence.

█ This Court concludes on the basis of the charge in the information, the Commonwealth, by limiting the proof to causing or attempting to cause serious bodily injury to another, knowingly or recklessly, under circumstances manifesting extreme indifference to the value of human life, is bound by its charge and cannot go beyond the allegation in the information and proceed to offer proof of the use of a deadly weapon at sentencing.

## II.

The second area in which the Commonwealth's procedure is defective in seeking enhancement of the sentence pertains to the defendant's plea to Counts 2, 3 and 4.

As to Count 2, theft by unlawful taking, the following colloquy ensued between Mr. Cauley, the assistant district attorney, and the defendant:

MR. CAULEY: The reason you are charged with that offense is because on or about September 19, 1982, here in Erie County, Pennsylvania, you, Gus Taylor, III, unlawfully took or exercised unlawful control over movable property of another person.

That would be the sum of $120 in currency. You took it from the vehicle belonging to Belinda Watson, this occurring at 4122 Maxwell Avenue in Erie, Pennsylvania, and you took it with the intent to deprive her of that property; thereby, you committed the crime of Theft by Unlawful Taking or Disposition. That's the reason why you did or why you were charged with that offense; do you understand that?

MR. TAYLOR: Yes.

MR. CAULEY: Okay, when you plead guilty to that, you are admitting that that's in fact what you did, correct?

MR. TAYLOR: Correct.

MR. CAULEY: You did that?

MR. TAYLOR: Right.

(P.T. 8) Next, Mr. Cauley carried Mr. Taylor through an exposition of the facts constituting the crime of unlawful restraint, as follows:

MR. CAULEY: When you plead guilty to that, sir, you admit that on or about the same day and year, which would be September 19, 1982, here in Erie County, you, Gus Taylor, III, did knowingly restrain another person—that would be Belinda Watson—unlawfully in circumstances which placed her in danger of serious bodily injury as I've explained it to you in that you kept her against her will in her vehicle, you took her to a certain

location which is unknown to the Commonwealth here in the City of Erie, and during the time that you had her in that location you beat her, as you will admit later in the Aggravated Assault charge. By doing all of these things under those circumstances, you exposed her to this risk of serious bodily injury that would be the basis of the charge to which you would be pleading guilty; do you understand that?

MR. TAYLOR: Right.

MR. CAULEY: Okay, and is that what you are telling the Court you did?

MR. TAYLOR: Right.

(P.T. 10–11) Likewise, these admissions contained no reference to a knife.

■ As stated above, the Commonwealth elected to charge in the information a substantially different allegation than contained in the complaint, charging defendant with § 2702(a)(1), rather than § 2702(a)(4). In conformity with the charge, defendant entered into a plea agreement with the district attorney's office in which he pled guilty to Count 4 as it was stated in the information. At Page 11 of the plea testimony, Mr. Cauley, the assistant district attorney, addressed the defendant as follows:

MR. CAULEY: Okay, the Aggravated Assault charge at Count 4, Mr. Taylor, would be somewhat similar. Aggravated Assault requires that you attempt to cause serious bodily injury to another person; that is, that you tried to do that as I've defined serious bodily injury or you actually do cause that injury intentionally, knowingly, or recklessly, which means basically knowing what you were doing on purpose under circumstances by which it can be shown that you have a serious disregard for the value of human life of that person. That would be aggravated assault in this case; do you understand that?

MR. TAYLOR: Right.

MR. CAULEY: The specific basis of the charge would be that on or about the same day and year in Erie County, Pa., you attempted to cause serious bodily injury to

another, or you did cause that injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; that being the life of Belinda Watson, *in that you beat her with your fists numerous times about the face and body causing serious bodily injury to her: contusions, abrasions, and a broken nose occurring at an unknown location somewhere in the City of Erie and thereby you committed the crime of aggravated assault, a felony of the second degree. That's the factual basis behind this charge,* the reason why you were charged with the offense; do you understand that?

MR. TAYLOR: Right.

MR. CAULEY: Okay, when you come in here and plead guilty to that charge, *that's what you tell the court that you, in fact, did do to Belinda Watson; do you understand that?*

MR. TAYLOR: *Right.*

MR. CAULEY: *And is that what happened?*

MR. TAYLOR: *Yeah.*

(Emphasis added throughout.) Thus, while it appears on the record that Mr. Taylor pled guilty to three offenses, he did not admit, nor was it ever averred or alleged by the Commonwealth that a weapon was involved. The colloquy also established the parameters which bound the court when imposing sentence. Mr. Taylor agreed with the Commonwealth that in exchange for the Commonwealth's dismissal of the charges of robbery and terroristic threats, Mr. Taylor would plead guilty to counts of receiving stolen property, unlawful restraint and aggravated assault. This conclusively, in addition to the colloquy, limited the Commonwealth's use of weapons evidence in sentencing. It is fundamental to due process that an accused may not be convicted on the basis of anything not admitted in the evidence. *Commonwealth v. Sojourner,* 268 Pa.Super. 472, 408 A.2d 1100 (1978), *aff'd as modified on rehearing,* 268 Pa.Super. 488, 408 A.2d 1108 (1979). *Also see Com-*

*monwealth ex rel. Valentine v. Strongel,* 246 Pa.Super. 466, 371 A.2d 931 (1977).

Subsequently, on Friday, March 4, 1983, a sentence hearing was held during which the assistant district attorney presented the victim, Belinda Watson. She testified to the effect that when Mr. Taylor removed her from the house, he threatened her with a weapon. The testimony of Belinda Watson at page 11 of the sentencing transcript is as follows:

MR. CAULEY: Belinda, was there a knife involved in this incident?

BELINDA WATSON: There was.

MR. CAULEY: Would you tell the judge about the knife, please?

BELINDA WATSON: It's a hunting knife. He's had it before, pulled it out any time he wanted to.

MR. CAULEY: Were you threatened with that knife?

BELINDA WATSON: Yes, I was. He told me he was going to cut my throat with a knife that night.

MR. CAULEY: Thank you, Belinda.

This testimony was introduced by the assistant district attorney to substantiate his position that a weapon enhancement sentence should be imposed on the defendant. The difficulty with this testimony is that it comes after a plea agreement in which the admissions by the defendant and the allegations made by the Commonwealth did not comprehend the use of a weapon during those offenses.

■ The limited testimony by the victim at the sentence hearing was not sufficient to establish that the weapon was used at the time of the activities alleged in the counts upon which the plea was taken, or that at *that time* a weapon was in fact possessed. Section 303.4(a) makes clear that the time frame which circumscribes the operation of the weapon enhancement sentence is that of the triggering offense, that is, "during the commission of the current conviction offense", this becomes important as it relates to the crimes charged in the information as opposed to those charges dismissed as part of the plea agreement. From the

victim's statement it is conceivable the knife was used to terrorize Belinda to have her move out of the house. As such, possession of the knife would have been the basis for the count of terroristic threats, which was dismissed by the district attorney as a condition of the plea agreement. One might also speculate that it was inherent in the robbery count, which likewise was dropped. It does not appear from the transcripts of the plea and sentence hearings, either by admissions of the defendant or the testimony of the victim, that a knife was possessed, used or threatened during the course of the crimes charged. Only by referring to the complaint and hearsay statement of the victim in the pre-sentence report can we reach a different conclusion.

This Court believes the Commonwealth is bound by the record on the plea as to what the defendant admitted in exchange for the plea of guilty. Thus, the record neither establishes there was a weapon involved in the assault and battery, nor that one was possessed by the defendant at the time of the other offenses to which he tendered a plea of guilty. *See Commonwealth v. Sojourner, supra.*

At the sentencing, the trial judge considered the sentencing guidelines and entered a sentence in the extreme range of the minimum sentence and within one-half month of the lowest range of the aggravated sentence. He also entered a concurrent sentence of probation for two years and a consecutive period of probation for four years. In all respects it appears fair and within the guidelines, and since the defendant is not requesting withdrawal of his guilty plea and is accepting of his sentence, there is no basis for reviewing it except to the extent alleged by the Commonwealth; that is, the impropriety of the court in failing to add a deadly weapon enhancement.

### III.

As to the third matter which this Court considers relevant to this issue, we feel bound to comment as to whether or not the weapon enhancement provision can in fact stand when it provides merely for the *possession* of a deadly

weapon during the occasion of the crime charged rather than establishing some nexus between the possession, the weapon and the crime, and provides for the likelihood, in some cases, of an addition to the sentence which would take it beyond the permissible minimum of incarceration.

A serious question exists concerning the constitutionality of this provision. In applying this section, it is provided at 42 Pa.C.S.A. § 9721, Sentencing Guidelines, § 303.4:

Deadly weapon enhancement:

(a) When the court determines that the defendant or an accomplice possessed a deadly weapon as defined in 18 Pa.C.S.A. § 2301 (relating to definitions), during the commission of the current conviction offense; at least 12 months and up to 24 months confinement shall be added to the guideline sentence which would otherwise have been imposed.

Section (b) provides for exceptions for those crimes which have as an inherent element to the charge, the use of a weapon, including 18 Pa.C.S.A. § 2702(a)(4), aggravated assault, as discussed above. In reading the requirements of this section, the operative term becomes "possessed a deadly weapon."

■■■ At the outset, there is nothing in the enhancement section which clarifies the meaning of possession. To ascertain the statutory meaning of "possession" we must look to 18 Pa.C.S.A. § 301, having to do with culpability. Section 301(c) provides:

Possession as an act.—Possession is an act, within the meaning of this section, if the possesser knowingly procured or received the thing possessed or was aware of its control thereof for a sufficient period to have been able to terminate his possession.

This definition is broad and relates to knowledge as well as custody and control. In terms of the breadth of that definition as applied to the deadly weapon enhancement factor, it is far too broad to make the section viable. By virtue of this definition, it is possible to have possession of a deadly weapon when that weapon is in the back seat of a

car, in the glove compartment, under the seat of a car, in one's trousers, concealed in a briefcase, or even in a room miles away from the place where a defendant is arrested. The definition is so broad that it could comprehend numerous situations where the weapon was not in hand and was not, in fact, contemplated to be used during the course of the criminal activity, and yet would subject the defendant to the enhancement penalty. This section, therefore, does not meet the constitutional test of preciseness required of a criminal statute and its vagueness is fatal. "A statute (guideline) which either forbids or requires the doing of an act in terms so vague that men of reasonable intelligence must necessarily guess [as to] its meaning and differ as to its application [lacks] the first essential of due process of law." (Citations omitted) *Commonwealth v. Baggs,* 258 Pa.Super. 133, 139, 392 A.2d 720, 723 (1978). The Pennsylvania Constitution, Article I, § 9, provides that "... the accused hath a right ... to demand the nature and cause of the accusations against him....", notice of which is lacking here. *See Commonwealth v. Broughton,* 257 Pa.Super. 369, 390 A.2d 1282 (1978).

It would appear that a rational weapon enhancement provision would require that the possession be one of immediate physical possession where, in fact, the weapon was being used or threatened in the commission of a crime which did not intrinsically involve the use of a weapon.

> [W]hen a criminal statute calls for construction, it is not a construction that is supported by the greater reason that is to prevail but that one which, if reasonable, operates in favor of life and liberty.

*Commonwealth v. Exler,* 243 Pa. 155, 162, 89 A. 968, 971 (1914); as quoted in *Glover, supra,* 397 Pa. at 546, 156 A.2d at 116.

As an example of how specificity is required in relating possession to criminal behavior, § 907(b) of the Crimes Code, Possessing instruments of crime, provides:

> Possession of weapon.—A person commits a misdemeanor of the first degree if he possesses a firearm or other

weapon concealed upon his person with intent to employ it criminally.

Possession is specified in terms of both its location and the intent, and thus provides the type of specificity that every criminal statute requires. Similarly, the Uniform Firearms Act at § 6105 of the Crimes Code, provides:

Former convict not to own a firearm, etc.—No person who has been convicted in this Commonwealth or elsewhere of a crime of violence shall own a firearm, or have one in his possession or under his control.

In order to avoid any possible confusion, the statute speaks of owning a firearm as well as possessing and controlling, giving three alternative possibilities which make it clear that under no circumstances can a convict have any dominion over a weapon. The definition of owning, possessing or controlling is specific enough to cover every apparent eventuality relating to dominion by a convict over a weapon, thereby eliminating any confusion or question concerning the defendant's rights or lack of them relating to a weapon. Even with a definition so specific, there is a problem of establishing possession or control. *Commonwealth v. Boatwright*, 308 Pa.Super. 41, 453 A.2d 1058 (1982) and *Commonwealth v. Townsend*, 428 Pa. 281, 237 A.2d 192 (1968) held that the mere presence of a defendant in an automobile was insufficient to prove a violation when there was a weapon found in the vehicle. The Commonwealth must prove the defendant had both power to control the firearm and intent to exercise that control.

Thus, if the weapon enhancement provision were to be construed to define possession as physical control for the purpose of immediate use, it would meet the test of constitutionality more clearly than the broader concept of possession, which could mean control even in a remote place, with neither intent nor capability of use at the time the crime charged was being committed.

In further analogy, § 6103 of the Uniform Firearms Act provides:

> Crimes committed with firearms: If any person shall commit or attempt to commit a crime of violence when armed with a firearm contrary to the provisions of this subchapter, he may, in addition to the punishment provided for the crime, be punished also as provided by this subchapter.

This appears closer to the intended purpose of the weapon enhancement provision of the Sentencing Code. However, as can be seen, the provision in § 6103 is much more specific and capable of reasonable interpretation than § 303.4 of the Sentencing Guidelines.[5] To further clarify the intent of § 6103, Evidence of intent, § 6104 provides:

> In the trial of a person for committing or attempting to commit a crime of violence, the fact that he was armed with a firearm, used or attempted to be used, and had no license to carry the same, shall be evidence of his intention to commit said crime of violence.

These sections do not constitute separate offenses but simply provide that a violation of the weapons offense does not merge with the crime of violence for purpose of sentencing. *Commonwealth v. Flynn*, 314 Pa.Super. 162, 460 A.2d 816 (1983), *Commonwealth v. Simpson*, 302 Pa.Super. 287, 448 A.2d 640 (1982). To give them legal effect, it is necessary to relate them to the crimes charged. Thus, they provide an almost identical purpose to that designed by the sentencing commission for the weapon enhancement sections, except they contain the specificity lacking in the guidelines.

The most recent pronouncement by the Legislature in this regard is the scheme of mandatory minimum sentence provisions relative to certain Crimes Code violations, 42 Pa.C.S.A. §§ 9712–9718 (Act No. 54 of 1982). Section 9712, Sentence for offenses committed with firearms, provides:

> (a) Mandatory sentence.—Any person ... shall, if the person visibly possessed a firearm during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any

5. In Section 6102, Definitions, "Firearm" and "Crime of Violence" are also clearly defined.

other provision of this title or other statute to the contrary.

The Supreme Court of Pennsylvania has recently passed on the constitutionality of the mandatory sentence provision above, and ruled it to be constitutional. *Wright, supra.* The mandatory sentence provision differs from the Guideline Weapons Enhancement section in the following respects.

1) The mandatory sentence applies only to firearms, the guidelines apply to deadly weapons.

2) The mandatory sentence requires "visible possession", the guidelines "possession".

3) The mandatory sentence requires a minimum sentence within the maximum term of imprisonment set by legislation, whereas the guidelines enhancement section *adds* to the guideline sentence and therefore may *exceed* the maximum term of imprisonment mandated by the legislature.

4) The mandatory sentence section provides for a minimum standard of proof, preponderance of the evidence, whereas the guidelines provide none.

In *Wright, supra,* the Supreme Court, speaking through Justice Nix, held:

The effect of section 9712 is merely to limit the discretion of the sentencing court in the selection of a minimum sentence where it is determined that the defendant visibly possessed a firearm during the commission of the crime. The maximum permissible term of imprisonment remains unaffected.

. . . .

In the context of a section 9712 proceeding, moreover, the risk of error is slight. Visible possession of a firearm is a simple, straightforward issue susceptible of objective proof. There is scant potential that suspicion and conjecture will enter into the factfinder's decision. In addition,

evidence of visible possession is amenable to meaningful appellate review.

508 Pa. at ——, 494 A.2d at 362.

It is submitted that if the weapon enhancement provision is to meet the test of constitutionality, it must have language to delineate the specific intent of the guidelines and its application, similar to that stated in the Crimes Code for weapons offenses.

If the broader interpretation of possession was, in fact, intended, then it was obviously unconstitutional; to relate a totally irrelevant activity such as possession of a weapon, which may or may not be a crime, to the criminal activity, requires a nexus that rationally necessitates enhancement of the sentence for the crime committed.

The very definition of deadly weapon, requiring conditions, circumstances, and instrumentalities that are capable of varying interpretations under different circumstances, would cause this statute to be unconstitutionally vague because of the inability to relate culpability to the acts charged.

By analogy, § 2301 of the Crimes Code, Title 18, defines "deadly weapon" as follows:

Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

This definition relates to a deadly weapon and its capacity. It is a definition that has a utilitarian application subject to precise interpretation under the facts of each case as it refers to use or intended use. No such interpretive provision is contained in § 303.4, which renders any interpretation subject to uncertainty and speculation.

In *Commonwealth v. Stancil*, 233 Pa.Super. 15, 334 A.2d 675 (1975), in addition to finding that a foot is a sufficient weapon to make the assault an aggravated assault in con-

struing 18 Pa.C.S.A. § 2702(a)(1), (4), this Court held it is virtually impossible to make a prophylactic rule to cover the problem of what constitutes a dangerous weapon. Some weapons are such as a matter of law, and others must be construed by a jury as a matter of fact, in accordance with the evidence and intent of the actor. *See Commonwealth v. Conner,* 445 Pa. 36, 282 A.2d 23 (1971).[6]

This Court has struggled on numerous occasions with the definition of weapons, be they firearms, instruments of crime or offensive weapons. We have already detailed § 907, Possessing instruments of crime, in relation to possession. That section further defines "weapon" as:

> Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have.

The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable and components which can readily be assembled into a weapon.

In *Commonwealth v. Adams,* 245 Pa.Super. 431, 369 A.2d 479 (1976), this Court held that a nonchaku (nun chuck) stick was not an offensive weapon. The Crimes Code states at § 912(a), Possession of weapon on school property:

> Definition.—Notwithstanding the definition of "weapon" in Section 907 (relating to possessing instruments of crime), "weapon" for purposes of this section shall include but not be limited to any knife, cutting instrument, cutting tool, *nun chuck stick,* (emphasis added), firearm, shotgun, rifle and any other tool, instrument or implement capable of inflicting serious bodily injury.

In cases construing § 908, Prohibited offensive weapons, despite enumeration of a variety of objects designated as offensive weapons, the court's inquiry always turned on the

---

6. *See also* Annot., 33 A.L.R.3d 922, kicking as assault with deadly weapon; Annot., 100 A.L.R.3d 287, pocket or clasp knife as a deadly weapon; 89 A.L.R.3d 1026, automobile as a deadly weapon; Annot., 7 A.L.R.4th 607, dogs as a deadly weapon; Annot., 8 A.L.R.4th 843, walking cane as deadly weapon.

operative term, "which serves no common 'lawful purpose'." *Commonwealth v. Adams,* supra; "[A] revolver can serve a common lawful purpose..." *Commonwealth v. Smith,* 253 Pa.Super. 279, 384 A.2d 1343 (1978); a knife that had a blade which was manually exposed (as opposed to automatic exposure) can serve a lawful purpose. *Commonwealth v. Ashford,* 263 Pa.Super. 100, 397 A.2d 420 (1979); "[A] small gun ... may also be carried by any citizen for defensive purposes." *Commonwealth v. Rose,* 265 Pa.Super. 159, 401 A.2d 1148 (1979). Thus, it is seen that in all weapon offenses, the construction is very precise and technical with the language of the statute being explicit and capable of reasonable interpretation, as to possession, use or intent.

In this regard, combining the term "possession," capable of broad interpretation, and "deadly weapon" which must be construed in relation to use and circumstances, the sentencing commission has succeeded in creating a term incapable of specific definition and much too broad for constitutional certainty. Since the Guidelines do not include the limiting term "control" in defining possession, under those circumstances our appellate courts have required the proof of a "knowledge" or "awareness" element; *i.e.* the "exercise of *conscious* dominion or control," (emphasis added). Thus, *proof* of (physical) *possession is not required pursuant to § 301(c), supra. See, e.g., Commonwealth v. Rambo,* 488 Pa. 334, 337, 412 A.2d 535 (1980). *Commonwealth v. Watts,* 319 Pa.Super. 137, 465 A.2d 1267, 1269 (1983). *C.f. Commonwealth v. Burkley,* 297 Pa.Super. 400, 443 A.2d 1182 (1982). Also, in every crime delineated in the Crimes Code related to weapons and possession, there is a reasonable and logical nexus between the two and the behavior sought to be prevented. Here, we believe the sentencing guidelines fail to provide the certainty and the reasonable nexus to make this provision enforceable.

It is settled that, as a matter of due process, a criminal statute (guideline) that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is

forbidden by the statute (guidelines)" (citations omitted), or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," (citations omitted) is void for vagueness.

*Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596, 606 (1979). Likewise, as stated above, a provision in the guidelines, which has the effect of extending the permissible term of imprisonment provided by statute, cannot stand. *See Wright, supra.*

For these reasons, we affirm the judgment of sentence of the court below and dismiss the appeal of the District Attorney of Erie County.

ROWLEY, J., joins in the Court's affirmation of the Judgment of Sentence and in Part II of the Majority Opinion.

SPAETH, President Judge, concurs with opinion, joined by BECK, J.

JOHNSON, J., concurs, joined by CAVANAUGH, J.

WICKERSHAM, J., dissents with opinion.

SPAETH, President Judge, concurring:

I concur in the majority's conclusion that the judgment of sentence should be affirmed, but I reach that conclusion by reasoning different from the majority's.

Appellee pleaded guilty to three offenses, all of which are described as occurring after he entered the victim's car. If for the sake of argument we put aside the majority's criticism of the sentencing procedure and accept the victim's testimony and her statements to the police as included in the presentence report, still, the record does not show that appellee possessed a deadly weapon "during the commission of the current conviction offense." 204 Pa.Code. § 303.4. Specifically, the record does not show what happened to the knife after appellee and the victim got into the car. The victim told the police that "[she] never did think about that knife too much. He never really pulled it out again after he

got in the car." R. 41–A. Accordingly, the trial court did not err in applying the sentencing guidelines, 204 Pa.Code §§ 303.2, 303.4, and the judgment of sentence should be affirmed.

Given the state of the record, taking it as the Commonwealth would have us read it, it is unnecessary to consider, and I do not consider, either whether the Commonwealth is bound by the description of the offense in the information so as to exclude proof of the use of a deadly weapon at sentencing (Part I of the majority's opinion), or whether the definition of possession of a deadly weapon is so vague as to be unconstitutional (Part III of the majority's opinion).

BECK, J., joins.

JOHNSON, Judge, concurring:

I join in Parts I and II of the majority opinion. I agree that the judgment of sentence should be affirmed and that the single issue raised by the Commonwealth on this appeal is without merit.

I take no position with respect to Part III of the majority opinion, which deals with the constitutionality of Section 303.4(a) of the Sentencing Guidelines, since this issue was not included as part of the question to be decided on the original appeal and its resolution, in my view, is better postponed to await an appropriate future case. *Cf. Sladkin v. Greene,* 359 Pa. 528, 59 A.2d 105 (1948); *Burns v. Unemployment Compensation Board of Review,* 164 Pa. Super. 470, 65 A.2d 445 (1949).

CAVANAUGH, J., joins.

WICKERSHAM, Judge, dissenting:

The majority has determined that because the information did not accuse appellee of possessing a deadly weapon, and because appellee did not admit in his guilty plea that he possessed a deadly weapon, the Commonwealth may not present evidence at the sentencing hearing to establish that appellee possessed a weapon during the commission of the

crimes charged. Because I would hold that the Commonwealth may present such evidence for sentencing purposes, I dissent.

Appellee pleaded guilty to charges of unlawful restraint, aggravated assault, and theft by unlawful taking. Appellee admitted every element of each offense; thus, each element was proved beyond a reasonable doubt. Possession of a deadly weapon is not an element of any of these crimes. It was not incumbent upon the Commonwealth, therefore, to include this factor in the information filed against appellee. *Compare Commonwealth v. Allen,* 508 Pa. 114, 494 A.2d 1067 (1985), a prior conviction of a specified violent crime, is not an element of the offense. Furthermore, it was not necessary for appellee to admit that he possessed a deadly weapon in order to be found guilty of the crimes charged. As the Attorney General points out, when the Commonwealth proved beyond a reasonable doubt that appellant committed the instant offenses, it concurrently established its right to impose punishment upon appellee. *See* Brief for Attorney General at 17–18.

It is at this point that the Sentencing Guidelines in general, and the deadly weapon enhancement provision specifically, come into play. The guidelines do not play a role in the guilt determining process; rather, they are a tool to be used, together with a consideration of the circumstances of the case, by the sentencing judge in choosing the appropriate punishment to be meted out to the defendant. In imposing sentence,

> [t]he court must consider the character of the defendant *and the particular circumstances of the offense* in light of the legislative guidelines for sentencing, and must impose a sentence that is the minimum sentence consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant.

*Commonwealth v. Doyle,* 275 Pa.Super. 373, 380, 418 A.2d 1336, 1340 (1979) (emphasis added). Surely the possession of a deadly weapon during the commission of a crime is a circumstance of the case which the sentencing judge should

consider in imposing sentence; the deadly weapon enhancement provision ensures such consideration. *See Commonwealth v. Wright,* 508 Pa. 25, ——–—— 494 A.2d 354, 357–358 (1985).

I believe that section 9712 of the Mandatory Minimum Sentencing Act, 42 Pa.C.S. § 9712, supports my position. Section 9712 essentially provides that a defendant who visibly possessed a firearm during the commission of certain enumerated felonies shall be sentenced to a minimum of five years imprisonment. Particularly pertinent to the present problem is subpart (b) of that statute:

> **(b) Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The court shall consider any evidence presented at trial and shall afford the Commonwealth and the defendant an opportunity to present any necessary additional evidence and shall determine, by a preponderance of the evidence, if this section is applicable.

In *Commonwealth v. Wright, supra,* the Pennsylvania Supreme Court held that section 9712 is constitutional.

Admittedly, the case at bar is concerned with the deadly weapon enhancement provision of the Sentencing Guidelines rather than the Mandatory Minimum Sentencing Act; therefore, section 9712 is not controlling. Nevertheless, I believe that the procedure and language set forth in section 9712 are equally relevant to this and other cases dealing with the deadly weapon enhancement provision of the Sentencing Guidelines. The deadly weapon enhancement provision, like section 9712, "applies only in the event the defendant is convicted ... and thus relates solely to the sentencing proceedings." *Commonwealth v. Wright, supra,* 508 Pa. at ——, 494 A.2d at 357. Thus, possession of a weapon is not an element of the crimes charged and need not be

asserted prior to conviction. Applying section 9712 to the case at bar, it is clear that the Commonwealth was not required to give appellant notice of the applicability of the deadly weapon enhancement provision, or otherwise present evidence of appellant's possession and use of the hunting knife, prior to the entry of appellant's guilty plea.

Section 9712 further provides that the applicability of the section should be determined by the court at sentencing by a preponderance of the evidence. In *Wright, supra*, our supreme court held that this standard of proof does not violate due process.

> [W]e conclude that it is reasonable for the defendant and the Commonwealth to share equally in any risk of error which may be present in the factfinding process. In the context of a section 9712 proceeding, moreover, the risk of error is slight. Visible possession of a firearm is a simple, straightforward issue susceptible of objective proof. There is scant potential that suspicion and conjecture will enter into the factfinder's decision. In addition, evidence of visible possession is amenable to meaningful appellate review. Thus we are convinced that the preponderance standard satisfies the minimum requirements of due process as employed in the legislature's mandatory sentencing scheme.

*Id.*, 508 Pa. at ——, 494 A.2d at 362.

> [I]t is important to keep in mind that the defendant has already been found guilty of criminal conduct calling for some form of punishment. By his conviction the defendant has forfeited his right to remain free in society and is subject to incarceration. Proof of visible possession of a firearm by a preponderance of the evidence at the time of sentence based upon that conviction is a fair standard and is the process due in these circumstances.

*Id.*, Concurring Opinion by Larsen, J., 508 Pa. at ——, 494 A.2d at 357. I would hold that a preponderance of the evidence standard is also appropriate in cases applying the deadly weapon enhancement provision of the Sentencing Guidelines.

I believe that the Commonwealth met this burden of proof in the case at bar. Both the statement of the victim as contained in the presentence report and the testimony of the victim at the time of sentencing indicated that Taylor possessed and used a deadly weapon during commission of the crimes charged. Appellee neither objected to nor contradicted this evidence. In the absence of objection by the appellee, the sentencing judge was free to consider the presentence report and the victim's testimony. *Commonwealth v. Doyle, supra,* 275 Pa.Super. at 382, 418 A.2d at 1341. Thus, the Commonwealth proved by a preponderance of the evidence that appellee possessed a deadly weapon during the commission of the current conviction offense.

Despite my belief that the Commonwealth proved by a preponderance of the evidence that appellee possessed and used a weapon during commission of the current conviction offense, I feel nevertheless that a new sentencing hearing is required. Section 9712(b) of the Mandatory Minimum Sentencing Act requires that "reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing." I agree that such notice should also be required under the deadly weapon enhancement provision in order to insure that a convicted defendant's due process rights are not violated. Instantly, it is not clear whether appellee was provided with such notice. Perhaps appellee's failure to present contradictory evidence at the sentencing hearing was caused by a lack of notice. Thus, I would remand for a new sentencing hearing at which both the Commonwealth and appellee could present evidence as to the issue of whether appellee possessed a deadly weapon during commission of the current conviction offense. After hearing such evidence, the sentencing court should then determine, by a preponderance of the evidence, whether the deadly weapon enhancement provision of the Sentencing Guidelines is applicable.

Although I do not deny that it would be better practice for the Commonwealth to indicate its belief that the defend-

ant possessed a deadly weapon during the commission of the crimes charged sometime prior to the entry of a guilty plea, I do not agree that its failure to do so in the instant case was fatal to its request for application of the deadly weapon enhancement provision of the sentencing guidelines. Thus, I disagree with Parts I and II of the majority opinion; I would remand for a new sentencing hearing and resentencing.

With respect to Part III of the majority opinion, I agree with the Concurring Statement by Johnson, J. that the constitutionality issue was not raised by the parties to this appeal and should not be raised *sua sponte* by this court.