518 A.2d 1284

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Michael SEPTAK, Appellee.**

Superior Court of Pennsylvania.

Submitted June 9, 1986.

Filed Dec. 12, 1986.

---

376

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Com., appellant.

Carl M. Janavitz, Pittsburgh, for appellee.

Before CAVANAUGH, POPOVICH and MONTGOMERY, JJ.

MONTGOMERY, Judge:

Appellee Michael Septak pleaded guilty to charges of unlawful restraint[1], terroristic threats[2], and criminal conspiracy[3]. The sentencing court, over the Commonwealth's objection, refused to apply the deadly weapon enhancement

---

1. 18 Pa.C.S. § 2902.
2. 18 Pa.C.S. § 2706.
3. 18 Pa.C.S. § 903.

provision of the Sentencing Guidelines [4], and sentenced appellee to four (4) years probation and payment of a $500.00 fine and court costs. The court acknowledged that the sentence was below the applicable minimum guideline sentence. On appeal, the Commonwealth requests that we vacate the sentence and remand with instructions to apply the deadly weapon enhancement and impose a sentence within the enhanced guidelines. We agree with the Commonwealth that the sentencing court erred in refusing to apply the deadly weapon enhancement provision and that the sentence imposed unreasonably deviated from the Guidelines. We therefore vacate and remand for resentencing.[5]

This appeal arises out of a criminal episode which took place on November 10, 11 and 12 of 1982. The victim was Robert Johns, and the criminal actors included appellee Michael Septak and co-defendants Joseph Pokorny, Carl Pokorny, James Pokorny and Ronald Smith.

Robert Johns, a carpenter, was performing some work at the home of Joseph Pokorny. After learning that Joseph Pokorny had hidden a quantity of cocaine in the house, Johns stole the cocaine. It then occurred to Johns that Joseph Pokorny would discover the theft and seek retribution. In order to divert attention to another suspect, Johns set fire to Joseph Pokorny's motorcycle and forged a threatening note which he hoped would mislead Joseph Pokorny into thinking that some other person had burned his motorcycle and stolen his cocaine. Unfortunately for Johns, Joseph Pokorny was not misled.

On the afternoon of November 10, 1982, Joseph Pokorny came to Johns' home, punched Johns in the jaw, and then abducted Johns at the point of a loaded handgun. With the assistance of three associates, Joseph Pokorny took Johns

---

4. 204 Pa.Code § 303.4, *reprinted following* 42 Pa.C.S. § 9721.

5. As required by 42 Pa.C.S. § 9781(b), we find that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Guidelines, and will therefore permit this appeal by the Commonwealth. Commonwealth v. Mattis, 352 Pa.Super. 144, 146, 507 A.2d 423, 424 (1986).

back to the Pokorny residence, where Joseph's brothers Carl Pokorny and James Pokorny were waiting. Joseph Pokorny telephoned Johns' girlfriend, made a demand for $9,000.00 he felt he was owed by Johns, and warned the girlfriend not to call the police. The three Pokorny brothers then took turns guarding Johns with the handgun.

A few hours later, in the late afternoon or early evening of November 10, 1982, appellee Michael Septak appeared at the Pokorny residence. We do not know what Septak had been told by the Pokorny brothers, but we do know that Septak approached Johns in a threatening manner and stated that if he (Septak) had been "ripped off", he would have killed Johns. Septak also told Johns that the Pokornys should either shoot him or kill him. Shortly after this confrontation, Septak helped Carl Pokorny to tie Johns' hands together. Sometime before midnight, after Johns' hands had been untied, Septak suggested that Johns should be tied up again. Septak helped to tie Johns' hands and feet, and Johns was made to lie on a sleeping bag in the kitchen. Septak left the house around midnight, and had no further involvement in the criminal episode.

Subsequent events may be briefly summarized. On November 11, 1982, a member of the Johns family contacted the F.B.I. In turn, the local police were called in. Arrangements were made to deliver the ransom money at noon on November 12. At the designated time and place, Joseph Pokorny picked up the money and was immediately arrested. Later that day, Carl Pokorny, who had been guarding Johns at the Pokorny residence, was also arrested. Michael Septak was arrested on December 2, 1982.

By information filed on February 18, 1983, Septak was charged with kidnapping, unlawful restraint, terroristic threats, theft by extortion, and criminal conspiracy. Count four of the information, theft by extortion, specifically alleged that Septak had threatened "to shoot Robert Johns and/or otherwise injure him if he did not pay Joseph Pokorny $9,000 or $10,000 ..." After the Commonwealth placed

an offer of proof on the record at the guilty plea hearing [6], Septak pleaded guilty to charges of unlawful restraint, terroristic threats, and criminal conspiracy. The remaining charges were dismissed.

■ The Commonwealth first contends that the sentencing court erred in refusing to apply the deadly weapon enhancement section of the Sentencing Guidelines. This section provides that when the court determines that the defendant or an accomplice possessed a deadly weapon during the commission of a criminal offense, the court must add at least 12 months and up to 24 months to the guideline sentence which would otherwise have been applicable. 204 Pa.Code § 303.4. The sentencing court does not have the discretion to disregard this section in determining the appropriate guideline sentencing ranges. *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985).

■ In the instant case, the sentencing court refused to apply the deadly weapon enhancement section on the ground that neither the information nor the Commonwealth's offer of proof at the guilty plea hearing put Septak on notice that this section would apply. Even if we were to assume that such notice is required, the record clearly shows that it was given in this case. In count four of the information, the Commonwealth alleged that appellee Septak had threatened to shoot the victim. Additionally, during the offer of proof at the guilty plea hearing, the Commonwealth specifically stated that the abduction was carried out at gunpoint, that the Pokorny brothers had guarded Johns with a handgun, and that Septak had told Johns that the Pokorny brothers should either shoot or kill him. Thus, the record clearly shows that Septak was aware that his accomplices had possessed a gun during the course of the criminal episode.

*Commonwealth v. Taylor,* 346 Pa.Super. 599, 500 A.2d 110 (1985), on which both appellee and the sentencing court rely, is clearly distinguishable from the case at hand. In *Taylor,* no mention was made of a weapon being involved in

---

**6.** The offer of proof at the guilty plea hearing serves as the source of information for the preceding description of the criminal offense.

the criminal episode in either the information or the facts recited during the plea colloquy. Rather, Taylor was accused, and pleaded guilty, to beating the victim with his fists. At the sentencing, however, the victim testified that Taylor had threatened her with a knife. The court held that the victim's testimony at the sentencing hearing was not sufficient to establish that the knife was used at the time of the incidents to which Taylor had pleaded guilty. In the instant case, however, the facts to which appellee pleaded guilty included the fact that his accomplices possessed a gun during the incident.

■ Appellee argues further that the deadly weapon enhancement provision was not specifically mentioned in the plea colloquy. We know of no case law that requires that a defendant be advised of the specific Sentencing Guidelines which are applicable to his case prior to the court's acceptance of his guilty plea nor is such notice specifically required by statute.[7] It is important to note that we are here dealing with the Sentencing Guidelines and not with a mandatory sentencing provision. In *Commonwealth v. Reagan*, 348 Pa.Super. 702, 502 A.2d 702 (1985), this Court held that a defendant must be advised of the mandatory minimum sentences, 75 Pa.C.S. § 3731(e)(1), before he pleads guilty to drunk driving. In such a case, the defendant is facing certain imprisonment since the sentencing court has no discretion to disregard the mandatory sentence. *Commonwealth v. Pryor*, 347 Pa.Super. 239, 500 A.2d 811 (1985). The Sentencing Guidelines, however, do not preclude judicial discretion. *Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158 (1985). There is no doubt that the sentencing court has the power to impose a minimum sentence outside the Guidelines, provided sufficient reasons are set forth and the sentence is reasonable. 42 Pa.C.S. § 9721(b); *Commonwealth v. Drumgoole, supra; Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984). Under the proper circumstances, therefore, a de-

7. See, e.g., 42 Pa.C.S. § 9712, which requires reasonable notice by the Commonwealth that it intends to seek the mandatory sentence for visible possession of a firearm.

fendant may receive a sentence ranging anywhere from minimal probation to the maximum incarceration permitted by law. Septak was advised of the maximum penalties for each of the crimes to which he pleaded guilty, as is required by Pa.R.Crim.P. 319. We refuse to require that a defendant must be advised of the suggested minimum sentences set forth in the Sentencing Guidelines.

It is imperative that the sentencing court determine the correct Guidelines before imposing sentence. *Commonwealth v. Drumgoole, supra.* We agree with the Commonwealth, therefore, that the sentence imposed must be vacated and the case remanded for resentencing after consideration of the appropriate guidelines, including the deadly weapon enhancement.

The Commonwealth also contends that the sentence imposed was unreasonably lenient. The offense gravity score for the conspiracy charge (the most serious of the charges) is 6 and Septak's prior record score was zero. The Sentencing Guidelines, with the deadly weapon enhancement included, call for a minimum imprisonment of 16 to 36 months, or 24 to 42 months if there are aggravating circumstances, or 14 to 28 months if there are mitigating circumstances. Thus, the sentence of nonconfinement was 14 months below the lowest minimum recommended by the Guidelines.

In reviewing a sentence which is outside the Guidelines, we must determine whether the sentence is unreasonable. 42 Pa.C.S. § 9781(c)(3). In making this determination we must look at the nature and circumstances of the offense, the history and characteristics of the defendant, the opportunity of the sentencing court to observe the defendant, the presentence investigation report [8], the findings on which the sentence was based, and the Guidelines. *Commonwealth v. Dixon,* 344 Pa.Super. 293, 496 A.2d 802 (1985). After considering these factors, we must agree that the sentence of nonconfinement was unreasonable.

---

**8.** Although a presentence investigation was apparently made, the report was not included in the record forwarded to this Court. Obviously, our review of a sentence would be much easier and more accurate if we had the presentence report before us.

■ The reasons given by the sentencing court for deviating from the guidelines were that Septak had a clean criminal record for the previous ten years [9], that his involvement was minimal in terms of time, that his appearance on the scene was accidental, that he was married, had a family and had a business that employed two other persons, and that he had not had any contact with the Pokorny brothers since the incident occurred. The sentencing court's first reason, Septak's clean criminal record, is not an appropriate reason for deviating from the Guidelines because the Guidelines already give credit for an accused's prior record or lack thereof. *Commonwealth v. Drumgoole, supra.* We are left, then, with the fact of Septak's marital and employment status, that his involvement was minimal in terms of time (although not necessarily in terms of his actions), that his appearance on the scene was accidental and that he had no contact with his co-conspirators since his arrest.

■ When choosing among the sentencing alternatives of probation, partial confinement, total confinement, fine or no penalty, the sentencing court must consider the particular circumstances of the offense as well as the character of the defendant. In addition, the sentence must be consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. *Commonwealth v. Frazier, supra.* We believe the sentencing court in this case focused on the needs of appellee to the exclusion of the other factors, including the gravity of the offense, especially as it relates to the impact on the life of the victim and the community. See, *Commonwealth v. Mattis, supra.* We agree therefore that the sentence is unreasonably lenient.[10]

Judgment of sentence vacated, case remanded for resentencing in accordance with this opinion. Jurisdiction is relinquished.

9. Septak was apparently convicted, as a juvenile, of passing stolen postal money orders.

10. We also take note of the size of the deviation from the Guidelines, which in this case is fairly substantial, being in excess of one year less than the most lenient sentence contemplated by the Guidelines.

POPOVICH, J., files a concurring opinion and joins MONTGOMERY, J., majority opinion.

CAVANAUGH, J., files a dissenting opinion.

POPOVICH, Judge, concurring:

I join the lead opinion, but postulate the following scenario in response to the position espoused in the dissenting opinion:

> What if the defendant became involved in a conspiracy *after* his cohorts had killed the kidnapped victim, would the defendant be liable (as an accessory after the fact) for the acts of his co-conspirators and be exposed to the weapon enhancement provisions of the Sentencing Code?

Supposedly, under the dissent's rationale, the fact that the defendant was not aware of or present during the use of the weapon on the victim should render him immune from the effects of the weapon enhancement statute. With this I cannot agree. See *Commonwealth v. Rodgers*, 187 Pa.Super. 471, 144 A.2d 662 (1958).

Under settled law embracing the area of conspiratorial accountability, the occurrence of a killing during the commission of, e.g., a robbery by a group of felons would expose each to a sentence commensurate with a felony-murder (second degree murder). See *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979).

The defendant could not plead ignorance to the use of a weapon by his cohorts, and seek asylum in the fact that his involvement was conditional upon the effectuation of the crime without the use of a weapon. See *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255 (1963). This type of logic strains reality and runs head-on into the precept that each conspirator is responsible for everything done by his confederates, provided, of course, that it is in furtherance of the conspiracy. See, e.g., *Commonwealth v. Riley*, 330 Pa.Super. 201, 479 A.2d 509 (1984); *Commonwealth v. Rhey*, 140 Pa.Super. 340, 14 A.2d 192 (1940).

Also, 42 Pa.C.S. § 9721 does not make specific reference to the defendant having to be charged with the use or possession of a weapon during the commission of the crimes for which he is being sentenced. See *Commonwealth v. Bell*, 512 Pa. 334, 342–344, 516 A.2d 1172, 1177 (1986). If such were the case, there would be no need to have the term "accomplice" in the section unless the intent of the Legislature was to hold the defendant responsible for his confederates' actions. Stated differently, the intent of the section, as I read it, is to punish one not only for his possession of a weapon, but for the possession of a weapon by an accomplice out of which the crimes being charged flow. See 18 Pa.C.S. §§ 306, 903. Thus, although a defendant may not have been a principal when it comes to the *use* of a weapon, the fact remains that a weapon was used at bar upon the victim by a member of the conspiracy team. As a result, this conspiratorial web exposes *all* members of the cadre to liability for the act of the other, regardless of when it occurred so long as the act was in furtherance of the conspiracy. *Tate*, supra. On this, we are presented no evidence to reach a contrary conclusion.

Here, as recounted by the dissent, the victim was harassed with a weapon by one of defendant's co-conspirators. Accordingly, I see no reason not to hold the defendant accountable (through means of the weapon enhancement statute) for conduct engaged in by a member of the conspiracy.

CAVANAUGH, Judge, dissenting:

The charges to which appellee pled guilty do not involve the use of a deadly weapon nor does the factual summary presented by the Commonwealth at the guilty plea colloquy establish that a deadly weapon was used in the appellee's presence or that he should have known of its use. For these reasons, I believe the lower court properly did not apply the deadly weapon enhancement provision of the Sentencing Guidelines and that the probationary sentence and fine imposed were reasonable deviations from the

Guidelines under the circumstances. I dissent from the vacation of the sentence of the lower court and would affirm.

Appellee pled guilty to the charges of unlawful restraint, terroristic threats, and conspiracy.[1] None of these counts in the information filed by the Commonwealth alleged possession of a deadly weapon. Nor, for that matter, did the kidnapping or theft by extortion counts allege possession of a deadly weapon.[2] The theft count alleges a *threat* to shoot; no other reference to a firearm or other deadly weapon is contained in the information.

**1.** The counts to which appellee pled guilty are as follows:

Count 2, Unlawful Restraint, Misdemeanor 1
The actor knowlingly and unlawfully restrained another person, namely Robert Johns in circumstances exposing the said other person to risk of serious bodily injury, in violation of Section 2902 of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 2902.

Count 3, Terroristic Threats, Misdemeanor 1
The actor, with intent to terrorize Robert Johns threatened to commit the violent crime of murder and/or aggravated assault in violation of Section 2706 of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 2706.

Count 5, Criminal Conspiracy, Felony 2
The actor, with the intent of promoting or facilitating the crime of the kidnapping of Robert Johns and/or the extortion of $9,000 from Robert Johns and/or his family conspired and agreed with Joseph Pokorny and/or Carl Pokorny and/or Ronald Smith and/or James Pokorny that they or one or more of them would engage in conduct constituting such crime or crimes, and in furtherance thereof did commit the overt act of threatening Robert Johns with bodily harm and/or tying him up in violation of Section 903(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 903(a)(1).

**2.** The counts dropped by the Commonwealth are as follows: Count 1, Kidnaping, Felony 1
The actor unlawfully removed Robert Johns a substantial distance under the circumstances from 127 Teece Avenue, Bellevue, Pennsylvania the place where he was found, to 4525 Mount Troy Road Extention, Pittsburgh, Pennsylvania with the intent to hold him for ransom or reward, in violation of Section 2901(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 2901(a)(1).

Count 4, Theft By Extortion, Felony 3
The actor intentionally obtained or withheld property, namely, $10,-000 belonging to William Johns by threatening to inflict harm, namely, threatening to shoot Robert Johns and/or otherwise injure him if he did not pay Joseph Pokorny $9,000 or $10,000 which wold not have

The factual summary recited by the Commonwealth at the guilty plea colloquy referred to use of a handgun in the initial abduction of the victim and during a portion of the time the victim was held at the home of a co-conspirator. There was no representation that appellee was present during the brandishing of the weapon or that he was aware of its existence and use. Appellee was present during a relatively short portion of the entire time the victim was held and pled guilty to those crimes for which he bore responsibility. It is proper that only the offenses to which appellee pled guilty be looked at in determining application of the deadly weapon enhancement provision.

The relevant portion of the deadly weapon enhancement provision is as follows:

§ 303.4(a) When the court determines that the defendant or an accomplice possessed a deadly weapon, as defined in 18 Pa.C.S. § 2301 (relating to definitions), during the *commission of the current conviction offense;* at least 12 months and up to 24 months confinement shall be added to the guideline sentence which would otherwise have been imposed.[3]

204 Pa. Code § 303.4(a), reprinted at 42 Pa.C.S.A. § 9721 (emphasis added).

The language of this section clearly requires that the "current conviction offense" is the relevant focus of inquiry for determination of application of the deadly weapon enhancement provision. This reading of the language is in accord with the meaning ascribed to it by The Pennsylvania Commission on Sentencing. "A deadly weapon enhancement is added when a weapon was possessed while committing the crime being sentenced." Pa.C.Sent.2d at 47 (Sept. 1, 1986.) Thus, it is clear that only the offenses to which apellee pled guilty may be considered for enhancement purposes at the time of sentencing. The Commonwealth did not present any evidence that, relating to the offenses for

benefited the actor, in violation of Section 3923(a)(7) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa.C.S. § 3923(a)(7).

**3.** This section was amended effective January 1, 1986 to clarify the language but was substantively unchanged.

which guilty pleas were tendered, an accomplice possessed a deadly weapon. The entire criminal episode is not the proper object of review, but only the acts to which defendant admitted guilt and which resulted in convictions. To hold otherwise results in impermissible plea enhancement rather than sentence enhancement.

The Commonwealth further contends that the lower court unreasonably deviated from the Sentencing Guidelines in imposing a too lenient sentence. I would hold that the lower court adequately articulated its reasons for deviating from the guidelines and that the reasons were legally sufficient to support the sentence imposed. Ignoring the deadly weapon enhancement, the ranges for an offense gravity of 6 and a prior record score of 0 are minimum range 4–12 months, aggravated range 12–18 months, and mitigated range 2–4 months of confinement. The lower court's probationary sentence is not an abuse of discretion given the duration of the entire episode and appellee's brief and accidental involvement, appellee's background and character, employment status, family responsibilities, and avoidance of contact with co-defendants since the date of the criminal act.

I would affirm the judgment of sentence.