502 A.2d 1339

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Derrick DAYS, Appellee.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1985.

Filed Jan. 10, 1986.

Rona S. Totoki, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Barbara L. Charles, Philadelphia, for appellee.

Before McEWEN, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

In August, 1984, appellee Derrick Days was convicted in a non-jury trial of kidnapping, unlawful restraint, robbery, theft by taking and possessing instruments of crime.[1] Appellee's timely filed post-verdict motions for a new trial and in arrest of judgment were denied.

1. We note that following his conviction, the trial court increased appellee's bail from $15,000.00 to $30,000.00 and ordered a pre-sentence investigation and a mental health evaluation.

At the sentencing hearing, the Commonwealth requested that appellee receive a sentence of incarceration and stated to the trial court that eighteen (18) months was the bottom of the mitigated guideline range and that there was nothing to mitigate the offense.

The trial court, while agreeing that the offense was not mitigated, sentenced appellee as follows:

On the Criminal Information charging *Robbery* —"Time-in" (approximately eight (8) months) to twenty-three (23) months imprisonment;

On the Criminal Information charging *Kidnapping* —One (1) year probation to run concurrent with the sentence on the robbery conviction [2] and further appellee was forbidden from employment which involved working with children; [3]

On the Criminal Information charging *Possessing Instruments of Crime Generally* —One (1) year probation to run concurrent with the sentence on the robbery conviction; and

On the Criminal Information charging *Theft by Unlawful Taking or Disposition* —One (1) year probation to run concurrent with the sentence on the robbery conviction.

**2.** We note that although the formal sentence entered by the court on the kidnapping charge was one (1) year *concurrent* probation, at the sentencing hearing, the court said that the probationary sentence for kidnapping was to be *consecutive* and it was to be *three (3)* years not one year. (RR. 63a, 64a) As a matter of fact, the trial court in its Pa.R.A.P. 1925 opinion, says that the sentence she imposed on the kidnapping charge was "three years strict reporting probation." (Slip Op. p. 2) In its brief, the Commonwealth, quite incorrectly, has the sentences for robbery and kidnapping in reverse. However, since the Commonwealth has not raised the issue of the difference between the sentence for kidnapping as formally entered by the trial court on the criminal information and what was said by the trial court, both at the time of sentencing and again in the opinion, we shall do nothing here to resolve the apparent conflict, especially since we are vacating the sentence imposed and remanding for resentencing.

**3.** Appellee was not sentenced on his conviction for Unlawful Restraint. The court below properly concluded that for sentencing purposes, this conviction merged with the kidnapping charge.

The Commonwealth filed a petition for reconsideration of sentence, which was denied without a hearing. This appeal followed.

The Commonwealth claims that the trial court "failed to sufficiently consider the totality of the circumstances in sentencing defendant to the unreasonably lenient sentence imposed, and therefore impermissibly and unreasonably deviated from the guidelines promulgated by the Pennsylvania Commission on Sentencing." (Commonwealth's Brief at 3). Since we agree, the judgment of sentence is vacated and the case remanded for resentencing consistent with this opinion.

The facts which led to appellee's arrest and conviction were accurately summarized by the trial court as follows:

On April 17, 1984, Donald Martin, the complainant, was selling newspapers at the corner of 34th Street and Grays Ferry Avenue in Philadelphia. Around 1 p.m., Days, who was driving a yellow cab, stopped at 34th and Grays Ferry and signaled that he wanted to buy a newspaper. Martin approached the cab on the passenger side to hand Days the paper. As Martin reached into the cab to collect his fee, Days grabbed Martin's arm and told him to get into the cab. With his other hand, Days pointed a gun at Martin. Martin, who was carrying his stack of newspapers, obeyed. Days drove Martin around the city for two to three hours, holding the gun on him the entire time.

Days told Martin to give him the newsboy's apron, which Martin was wearing. Martin placed the apron on the floor of the cab. It contained the day's receipts, about $80. Martin kept asking Days where he was being taken. Days repeatedly told him to shut-up or be quiet.

When Days stopped for a red light about two blocks from Broad and Erie Streets, Martin threw the newspapers at him and jumped out of the cab. Martin ran around the corner and crouched behind a car, until he saw Days drive past. When he believed himself to be out of danger, Martin came out of hiding and walked home to West Philadelphia. When he arrived home an hour later,

Martin told his parents what had happened. Martin was crying and had an upset stomach.

The next afternoon, Martin, accompanied by his father and two police officers, went to the cab company to observe the drivers. They waited from 5 p.m. to 9 p.m. but Martin did not see the person who robbed him. The police gave him a phone number and instructed him to call if he saw the man again.

The very next day, April 19, 1984, Martin was [on] the cab company premises selling papers from office to office. He saw Days, immediately recognized him, left the building and called the police. When the police arrived, Martin accompanied them to the office and identified Days who was then placed under arrest.

(Slip op. at 1–2).

Although the Commonwealth, in seeking to appeal from the discretionary aspects of the sentence imposed in this case, properly initiated the appeal by the filing of a notice as required by Pa.R.A.P. 902, before proceeding to the merits of the issue raised herein, we must first determine whether or not there is a substantial question that the sentence imposed is not appropriate under the Sentencing Guidelines. *Commonwealth v. Drumgoole*, 341 Pa.Super. 468, 473, 491 A.2d 1352, 1354 (1985); *Commonwealth v. Fluellen*, 345 Pa.Super. 167, 169–170, 497 A.2d 1357, 1358 (1985). Since our review of the record convinces us that a substantial question exists in this case, we will permit the Commonwealth's appeal.

The computation for the Guidelines' sentence in this case is not in dispute. Since appellee has no prior conviction,[4] his prior arrest score under the Guidelines was zero. 204 Pa.Code § 303.7. The offense gravity score for kidnapping,

---

**4.** We know from the notes of testimony taken at appellee's preliminary hearing in this case, which notes are a part of the record before us, that at the time of appellee's arrest in this case, he had three (3) outstanding arrests. (N.T. April 23, 1984, at 21–22). Two of those arrests involved criminal solicitation and corrupting the morals of minors. We have not considered these arrests in the disposition of this appeal.

the most serious offense for which appellee was convicted, was eight. 204 Pa.Code 303.8. Therefore, the correct sentence range under the Guidelines for the kidnapping conviction, 204 Pa.Code 303.9(b), is:

| | | |
|---|---|---|
| Minimum Range | — | 24 to 48 months imprisonment |
| Aggravated Minimum Range | — | 48 to 60 months imprisonment |
| Mitigated Minimum Range | — | 18 to 24 months imprisonment |

Thus, it is clear that appellee's sentence of probation on the charge of kidnapping was outside the Guidelines. The legislature has provided that the appellate court, in reviewing the discretionary aspects of a sentence on appeal shall affirm the trial court's sentence unless it finds: (1) that the guidelines were erroneously applied; (2) that the sentence, even though within the guidelines, is 'clearly unreasonable'; or (3) that the sentence, if outside the guidelines, 'is unreasonable.' In any one of these three circumstances, we are required to vacate the trial court's sentence and remand the case with instructions. 42 Pa.C.S.A. § 9781(c). In determining whether a particular sentence is 'clearly unreasonable' or 'unreasonable', the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the pre-sentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence. *Commonwealth v. Drumgoole, supra,* 341 Pa.Superior Ct. at 473, 491 A.2d at 1354; see also *Commonwealth v. Dixon,* 344 Pa.Super. 293, 301, 496 A.2d 802, 805–6 (1985)

Our independent review of the entire record in this case and our consideration of the nature and circumstances of the offense, the history and characteristics of the appellee, the trial court's "finding" upon which the sentence was based and the Guidelines promulgated by the Commission, compel us to conclude that the sentence was unreasonable.

We shall consider these factors *ad seriatim:*

1. *The nature and circumstances of the offense.*

The trial judge herself recognized the seriousness of appellee's crimes when at the sentencing hearing she said:

... think about that young kid who was terrified while you were driving him around for an hour and a half, he'll never forget that either. (RR. 56a)

... it's a serious dreadful thing to take a youngster, and we all saw that kid who testified, and he'll never get over that. He was scared to death, and it's only that he's very bright and resourceful that he managed to escape without physical injury and that he had the intelligence to go and find this defendant and prosecute, but this was an awful experience for a child and it was—it's not a momentary aberration, heat of passion, nothing at all like that. He knew very well that this kid was the newsboy, had money and there was a plan to steal it—to steal the money from a youngster who has no way of defending himself, and I consider it a pretty miserable crime. (RR. 61a, 62a).

In addition to what the trial judge had to say about the crime, we would also note that the young victim in this case was forced into the taxi-cab by appellee *at the point of a gun.* (N.T. August 29, 1984, at 19), and was relieved of his money *at the point of a gun.* (*Id.* at 23).

Appellee's sole defense was a general denial and he produced three witnesses: his mother, his brother and a close friend, all of whom testified, as he did, that they were together at the time the young victim was abducted. The trial judge found, as she had the right to do, their testimony to be both improbable and incredible.

2. *The history and characteristics of the defendant.*[5]

Defense counsel advised the trial judge that appellee had no prior convictions and no record or history of any acts of violence and that his present circumstances was sort of an

5. Although the trial judge ordered a pre-sentence investigation and a mental health evaluation, these reports were not made a part of the record. We, *sua sponte,* directed the District Attorney to file these reports with the prothonotary and we now have both reports. The better practice would be for the trial judge to make these reports a

aberration from his normal pattern of behavior. (RR. 52a) Defense counsel stated further that appellee had always been employed, that he was involved with the YMCA, with young groups, that he had no history of mental illness, and that the presentence report does not indicate any serious problems with mental illness other than a recommendation of psychiatric counseling. (RR. 52a). The trial judge was further informed by defense counsel that appellee had been incarcerated for a little over eight (8) months and had not demonstrated any violent behavior in prison and that he himself had been the subject of two alleged attacks while incarcerated. (RR. 52a, 53a).

The appellee testified as to his sorrow about the entire incident and stated he learned a great deal by his incarceration of eight months. (RR. 53a). The appellee, in response to a question from the trial judge, testified that he had received a General Equivalency Diploma and that if put on probation, he would live with his mother. (RR. 56a). When appellee informed the trial judge that he could get his job back with the Yellow Cab Company, the trial judge said she did not think he should be a cab driver (RR. 57a). Appellee then testified that his former boss at the YMCA offered him his old position as a child supervisor; however, the trial judge said "good heavens, that's not a good job for you either." (RR. 57a). Appellee then said he could go back into construction and the trial judge indicated that that would be much better. (RR. 58a).

The prosecuting attorney requested a sentence of incarceration within the Sentencing Guidelines for kidnapping and offered the opinion that he questioned the sincerity of appellee's announced remorsefulness in view of the fact that there was nothing in the pre-sentence report to explain his conduct—he was not a drug addict and he did not have any serious psychological problems. The trial judge then remarked "and he wasn't hard up." (RR. 62a).

Our own examination of the pre-sentence investigation reveals that these reports contain essentially the same

part of the certified record in all appeals where the sentence is challenged as being outside the Sentencing Guidelines.

information alluded to by both defense counsel and the prosecutor. We would merely add that the examining psychiatrist diagnosed appellee as a "mixed character disorder with schizoid elements." (Mental Health Evaluation, p. 2, submitted by Richard B. Saul, M.D.).

### 3. The trial court's findings and the Guidelines.

In our discussion of the trial court's findings, we look to statutory provisions, decisions of this court and, of course, the Guidelines.

42 Pa.C.S. § 9721(b) provides in pertinent part:

... In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

We know also that the legislature has said that a Sentence Guideline Form *shall* be completed at the court's direction and *shall* be made a part of the record no later than twenty (20) days after the date of each sentencing.[6] 204 Pa.Code § 303.1(b).

In *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984), this court held that "the judge's statement of

---

**6.** The record in this case did not contain the form required by 204 Pa.Code § 303.1(b) and we are at a loss to understand why the trial court would not comply with the requirement that it oversee the completion of the Guideline Sentence Form. The form was attached to the pre-sentence investigation which we requested *sua sponte;* however, the form was never completed. The required form has spaces to indicate whether the sentence is under the minimum guideline range, the aggravated guideline range or the mitigated guideline

reasons for the sentence made of record at sentencing in the defendant's presence constitutes a 'contemporaneous written statement.'" *Id.*, 328 Pa.Superior Ct. at 69, 476 A.2d at 457. However, the court in *Royer* also said that the contemporaneous statement must contain "the permissible range of sentences under the guidelines and, at least in summary form, the factual basis and specific reasons which compelled the court to deviate from the sentencing range." *Id.*, 328 Pa.Superior Ct. at 71, 476 A.2d at 458.

Further, there can no longer be any doubt that the *opinion* filed by the court below pursuant to Pa.R.A.P. 1925 does not constitute a contemporaneous written statement. *Commonwealth v. Bedley*, 325 Pa.Super. 157, 160, 472 A.2d 695, 697 (1984).

We have examined the sentencing transcript and the only reason we can find for the sentence imposed was because appellee had alleged that he was twice sexually assaulted while in detention awaiting sentencing. Although it is not clear from the record, apparently when appellee reported the alleged sexual assaults against him, he asked for and received from the prison authorities protective custody and was removed from the general prison population. (RR. 53a–54a).

That the trial judge sentenced outside the Guidelines solely because of her sympathy for the appellee and a concern for his safety, can best be understood from the following discussion between the prosecutor and the trial judge:

MR. CLARKE [Assistant District Attorney]: Yes, Your Honor. I will very respectfully take exception to any sentence outside of the mandatory range. I don't know whether or not we're going to reconsider in this case, I don't know. If I may now address the guidelines.

The bottom of the guidelines is eighteen months. Now, that's in the bottom of mitigated range. There is nothing

range as well as space to explain any deviation from the Guidelines. The completion of the form has an obvious desirability when a reviewing court is asked to review a sentence outside the Guidelines.

in and of itself mitigated about this offense, just the opposite.

THE COURT: It's not mitigated. The only mitigating circumstances I see in this crime, is that Mr. Days, himself, has been the victim of two very brutal attacks in the prison, and let me say that if it weren't for that, I would certainly give him at least eleven and a half to twenty-three but I am very reluctant to put him back in the prison system, in view of what has happened to him.

MR. CLARKE: I understand your point. I guess my response, Your Honor, is from the way the Philadelphia Prison System is and from the people who run Holmesburg, and the House of Correction, it seems that they have taken care of the problem.

THE COURT: Well, they're doing the best they can with an impossible situation.

MR. CLARKE: I guess I'm differing with Your Honor as to the impossibility of a situation. The man is now being protected, the man is there because he committed this very, very, very, very, serious crime.

THE COURT: It's a very serious crime. It's a very serious crime but the penalty for a serious crime as kidnapping of this youngster, is not to be rape, that's not policy.

MR. CLARKE: I understand. I understand, Your Honor, and I would ask you to impose a sentence within the guidelines and, of course, I, and perhaps Your Honor as well, should contact the prisons and make sure that the man is safe regardless of what sentence you impose, whether you go within the guidelines or not, and if Your Honor chooses, and only if Your Honor chooses, to break the guidelines in this case, this case is still worth incarceration, not just because the guidelines say incarceration, Your Honor.

RR. 59a–61a.

While we find the trial judge's sympathy and concern for appellee's safety to be commendable and possibly a subject

for further inquiry by the trial judge to the prison authorities, that is not a sufficient reason for the sentence imposed herein.

As we have already noted, *supra* p. 1341, the minimum range of the applicable guidelines for appellee's kidnapping conviction is twenty-four (24) to forty-eight (48) months. In calculating an appropriate sentence under the applicable guidelines, this should have been the starting point. Unfortunately, the only reference the court below ever made to the guidelines was when the court said that the offense gravity score was an eight (8). (RR. 54a). The court was later advised by the prosecutor that the bottom of the *mitigated* guideline range was eighteen (18) months; however, the trial judge stated the crime was not mitigated. The court went on to say, as we have already indicated, "the only mitigating circumstance I see in this case, is that Mr. Days, himself, has been the victim of two very brutal attacks [7] in the prison, and let me say that if it weren't for that, I would certainly give him at least eleven and a half to twenty-three but I am very reluctant to put him back in the prison system, in view of what happened to him." (RR. 60a). This is further evidence that the trial judge never considered the Sentencing Guidelines because even the eleven and a half to twenty-three months she would have given is still less than the *mitigated* sentence guideline for an offense gravity score of eight (8) such as we have here.

In conclusion, since the only reason offered by the court in support of the sentence imposed was a concern for appellee's safety in prison, we believe that no adequate reason exists for sentencing outside the Guidelines in this case and we are also convinced that the sentence depreciates the seriousness of the offense. Therefore, we find that the court's failure to follow the Sentencing Guidelines constitutes an abuse of discretion.

7. Although it would not change the result we reach, there is nothing in the record before us to support such a characterization of the *alleged* sexual assaults upon the appellee.

Judgment of sentence is vacated and the case is remanded for resentencing consistent with this opinion. Jurisdiction is relinquished.