507 A.2d 423

COMMONWEALTH of Pennsylvania, Appellant,

v.

**Walter MATTIS, Appellee.**

Superior Court of Pennsylvania.

Submitted Dec. 17, 1985.

Filed April 2, 1986.

Suzan E. Willcox, Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Patricia M. Dugan, Philadelphia, for appellee.

Before CIRILLO, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

This is an appeal by the Commonwealth from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County by which appellee was sentenced to twenty-two months to five years imprisonment followed by five years probation for aggravated assault[1] (with credit for approximately eleven months time served), and a consecutive term of five years probation, for possession of an instrument of crime.[2] The Commonwealth's sole argument on appeal is that the sentencing court unreasonably deviated from the recommended minimum ranges set forth in the Sentencing Guidelines, 204 Pa.Code § 303.1 *et seq.*[3] We

---

1. 18 Pa.C.S. § 2702.
2. *Id.* § 907(a). Appellant was also found guilty of simple assault and of recklessly endangering another person. *Id.* §§ 2701, 2705. These convictions were merged for sentencing purposes. N.T., May 23, 1984 at 49–50.
3. The crimes involved herein occurred on July 2, 1983. The Sentencing Guidelines apply to offenses committed on or after July 22, 1982 and, as such, were applicable in the instant case. *Commonwealth v. Dixon,* 344 Pa.Super. 293, 496 A.2d 802 (1985).

agree and, accordingly, vacate the judgment of sentence and remand for resentencing.

■ "Although the Commonwealth, in seeking to appeal from the discretionary aspects of the sentence imposed in this case, properly initiated the appeal by the filing of a notice as required by Pa.R.A.P. 902, before proceeding to the merits of the issue raised herein, we must first determine whether or not there is a substantial question that the sentence imposed is not appropriate under the Sentencing Guidelines." *Commonwealth v. Days,* 349 Pa.Super. 188, 192, 502 A.2d 1339, 1341 (1986); *see also, Commonwealth v. Fluellen,* 345 Pa.Super. 167, 170, 497 A.2d 1357, 1358 (1985); *Commonwealth v. Dixon,* 344 Pa.Super. 293, 496 A.2d 802 (1985); *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 491 A.2d 1352 (1985). As the discussion which follows shall indicate, "it appears that there is a substantial question that the sentence imposed is not appropriate...." 42 Pa.C.S. § 9781(b). We therefore permit the Commonwealth to appeal.[4]

As required by the Sentencing Guidelines,[5] the record before us contains the standard Sentencing Guideline Form. *Commonwealth v. Days, supra.* Under the offense of aggravated assault (marked "Ag. Ass."), the sentencing court listed the offense gravity score as "7" and the prior record score as "6".[6] In addition, in the section provided for the "deadly weapons enhancement",[7] the court checked

4. The lower court stated that this appeal is improper because 42 Pa.C.S. § 9781 "permits the Commonwealth to appeal only by allowance from the Superior Court," and such prior notice was never received. Slip op. at 2. However, this court has stated "the Commonwealth ... may initiate ... an appeal by merely filing a notice required by Pa.R.A.P. 902." *Commonwealth v. Drumgoole,* 341 Pa.Super. 468, 473, 491 A.2d 1352, 1354 (1985). As stated above, we have reviewed the appeal "initiated" by the Commonwealth and, finding a substantial question as to the sentence's appropriateness, we have decided to permit the appeal. *See Commonwealth v. Dixon, supra.*

5. *See* 204 Pa.Code § 303.1(b).

6. Appellee had eight prior convictions for various offenses. N.T., May 23, 1984, at 32.

7. 204 Pa.Code § 303.4.

the box "yes". Although the form provides boxes for the minimum range, the aggravated range and the mitigated range of sentences set forth in the guidelines, the sentencing court simply indicated the following under the "minimum range" heading:

43–64

+ 12–24

Finally, in section VIII of the form, entitled "Departure Report—List reasons why sentence departs from the guidelines," the court noted that the instant sentence was appellee's "1st incarceration—Court believes this sentence [and] not guidelines is appropriate under the circumstances." *See also* N.T., May 23, 1984, at 51.

Thus, the record before us indicates that the sentencing court considered at least the minimum range under 204 Pa.Code § 303.9(b), which, under the circumstances of this case, calls for 43 to 64 months imprisonment. The court also applied the deadly weapons enhancement section of the Sentencing Guidelines.[8] This section provides that "an additional twelve (12) to twenty-four (24) months confinement *'shall be added'* to the sentence prescribed in the guidelines. 204 Pa.Code §§ 303.2(5) and 303.4 (deadly weapons enhancement)." *Commonwealth v. Drumgoole, supra,* 341 Pa.Superior Ct. at 474, 491 A.2d at 1355 (original emphasis). Thus, under the guidelines, as enhanced by section 303.4, the *starting point* in calculating the sentence in this case, under the minimum range, was 55 months to 88 months. Although the sentencing court recognized this "starting point", *see* N.T., May 23, 1984, at 50, it chose to impose a sentence of 22 months to 5 years imprisonment followed by 5 years probation.[9] This sentence is clearly outside the range recommended by the guidelines.

**8.** Our review of the record leads us to conclude that appellee was convicted of violating 18 Pa.C.S. § 2702(a)(1). Hence the use of this sentence enhancement was proper. *See* 204 Pa.Code § 303.4(b).

**9.** This sentence, although somewhat unusual, is within the statutory maximum. *See* 18 Pa.C.S. §§ 106(b)(3), 2702.

When this court is called upon to review a sentence which is outside the guidelines, we must determine whether the sentence is "unreasonable." 42 Pa.C.S. § 9781(c)(3). *See Commonwealth v. Vanderhorst,* 347 Pa.Super. 648, 650, 501 A.2d 262, 263 (1985). In making this determination, we must examine the record with regard for:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the Commission.

42 Pa.C.S. § 9781(d).

We have considered these factors, and, on the basis of the record before us, conclude that the sentence imposed was unreasonable.

—1—

Regarding the nature and circumstances of the offense, as we stated at the outset, appellee was found guilty of aggravated assault, simple assault, recklessly endangering another person, and possession of an instrument of crime. The incident occurred in the evening of July 2, 1983, in Wissinoming Park in Philadelphia. Apparently, there was some bad blood between appellee and the victim, Raymond E. Mueller, although the record is not entirely clear as to what the source of their disagreements was.[10] Earlier in the evening, there was a confrontation between appellee and Mueller, at which time appellee put a knife to Mueller's throat. This altercation ended without further incident. N.T., December 15, 1983, at 13.

Mueller then went to a neighborhood taproom and purchased a quart of beer. After delaying a short while, he

10. There was testimony from an eyewitness to the effect that appellee claimed that Mueller owed him money. N.T., December 15, 1983, at 57. There was also testimony that the victim had been asking other people about appellee and "had questioned [appellee's] authority." *Id.* at 14.

proceeded to enter and walk across the park as he made his way home. Mueller's and appellee's paths crossed again and another altercation ensued. Appellee again approached Mueller with a knife in hand; however, this time he struck Mueller in the chest. Mueller fell or stumbled, but was able to break away. Appellee pursued Mueller, "grabbed him and threw him to the floor, then was on top of him with the knife at his throat." *Id.* at 59. Appellee then stabbed Mueller a second time. *Id.* at 19. When onlookers attempted to assist Mueller, or at least tried to break up the melee, appellee held them at bay.[11] Appellee testified in his own defense, and although he gave a different version of the events in which Mueller figured as the initial aggressor in the altercation, he never denied stabbing Mueller. *See id.* at 87–100. Mueller was hospitalized at Frankford Hospital for stab wounds and a collapsed lung.

The sentencing court itself noted the seriousness of the crime when it remarked:

> ... this could just as easily [have been] a homicide as an aggravated assault, had the knife been maybe an inch or two either way [ ] ... Something like this, this was not a stabbing in the arm or in the foot or something of that nature.

N.T., May 23, 1984, at 29. On the other hand, the court, in its opinion written pursuant to Pa.R.A.P. 1925, seemed to downplay the seriousness of the crime by stating that "Mueller initially became the aggressor," and that he and appellee "had both been drinking alcoholic beverages on the day of the incident." Slip op. at 2.[12] The court also noted that "Mueller admitted to a previous conviction for Aggravated Assault and Robbery" and that "it is not clear if

---

11. An eyewitness, James M. Eisinger, testified that after appellee had Mueller on the ground, "[a] friend of mine, James McGovern and me ran over towards them and Jim McGovern picked up a pipe or stick, something pretty large and went over towards them, and then Walt said, 'Stay away or I'm going to cut his throat,' and so, we backed off." N.T., December 15, 1983, at 59.

12. The court also mentioned that Mueller took dilantin, a phenobarbital, for seizures. *See* N.T., December 15, 1983, at 39.

[Mueller's] entire hospitalization resulted from the injury resulting from the stabbing or from a prior injury." *Id.*

Whether or not Mueller had been previously convicted of serious crimes or had prior injuries, there was no testimony which contradicted the trial court's finding that Mueller had been twice stabbed by appellee.. In addition, appellee's self-serving testimony regarding Mueller's initial "aggression" notwithstanding, it was also uncontradicted that once appellee grabbed the knife, Mueller "backed up" to avoid appellee's advance, was stabbed once by appellee, and then was chased, caught and again stabbed by appellee. N.T., December 15, 1983, at 16–19, 58–59. Indeed, even appellee testified that at the time he was actually stabbed, Mueller was unarmed, *id.* at 92,[13] and that he was not hit by Mueller. *Id.* at 96, 98–99.

The trial court, as evidenced by its opinion, obviously chose to believe appellee's testimony over the eyewitness' and Mueller's, at least with regard to who the initial aggressor was. It was clearly the court's prerogative to do so. *Commonwealth v. Days, supra,* 349 Pa.Super. at 195–196, 502 A.2d at 1342. Be that as it may, it is also clear that there was ample evidence to support the appellee's conviction on all the charges.

—2—

As to the history and characteristics of the defendant, we are at a disadvantage because the pre-sentence investigation has not been made a part of the record before us.[14] This is clearly *not* the preferred practice. *Id.,* 349 Pa.Superior Ct. at 194–195 n. 5, 502 A.2d at 1342 n. 5. However, we do have the benefit of a rather lengthy sentencing proceeding

**13.** Appellee had testified that Mueller initially came toward him carrying a bottle of beer in a threatening manner. *See* N.T., December 15, 1983, at 92.

**14.** The Commonwealth has included a copy of the report in its Reproduced Record. However, we believe an appellate court should confine its review to the certified record. As such our review will only extend to the record before us. *Commonwealth v. Quinlan,* 488 Pa. 255, 412 A.2d 494 (1980); *Commonwealth v. Jackson,* 329 Pa.Super. 293, 478 A.2d 474 (1984).

at which appellee's "history and characteristics" were discussed.[15]

Appellee had been arrested fourteen times and convicted of a crime eight times prior to his arrest and conviction in the instant matter. These prior offenses included forgery, burglary, simple assault and drug dealing. N.T., May 23, 1984, at 40. For each of these corrections, a probationary or suspended sentence was imposed; each probation was violated at least once, so that his record was eight probationary sentences and ten violations of probation. *Id.*

At the time of the sentencing hearing, appellee contended that if he was not incarcerated, he had the prospect of attaining support and assistance from his father [16] and his girlfriend. Also speaking in appellee's behalf was Sister Mary Elizabeth Henssans of the Archdiocese of Philadelphia's Catholic Social Services, Criminal Justice Administration. Sister Henssans testified that she had been counseling appellee, and that he was progressing in his treatment. She also testified that his family was and had been supportive of appellee and concerned for him, although "there have always been relationship difficulties between [appellee] and his father." *Id.* at 27. In any event, there was no indication that appellee's ignominious career had been caused by an unfortunate family or other personal background. As the following exchange between Mr. Kolansky, the assistant district attorney, and the sentencing court indicates, the judge was aware of appellee's background:

> MR. KOLANSKY: Judge, there's nothing in this man's history, the good Sister not withstanding that should indicate to this Court that this man should not be sent away for the period called for by the guidelines. The defendant in this case committed a vicious act, regardless of—

**15.** Our review of the sentencing proceeding and the rest of the record unearths no instance at which the sentencing court stated it based the sentence it imposed upon the pre-sentencing report.

**16.** Appellee's mother died during his incarceration while awaiting sentence.

THE COURT: You have just hit upon the one thing that's been disturbing me in this case. Mr. Mattis comes to us with a prior offense score of six and having spent no substantial amount of time, certainly not sentenced—

MR. KOLANSKY: He's had every opportunity in the world, Judge.

THE COURT: Which is what bothers me.

*Id.* at 41.

—3—

Finally, as to the application of the guidelines, the court apparently did *not* find the mitigated or aggravated minimum range appropriate, but rather considered the minimum range as a proper starting point under the circumstance. After adding the weapon enhancement section, the court began with a possible range of 55 to 88 months. However, the court settled on a sentence which has a minimum term of incarceration of 22 months, or a reduction of sixty percent from the suggested guidelines sentence.

The only explanation for this departure found on the guidelines form was the fact that appellee had never been incarcerated before. As the court explained at sentencing:

I want you to understand, Mr. Mattis, the reason I am imposing the sentence that I am, is because of the guidelines and because of your past criminal record. I want you to understand that I have not imposed the sentence that has been suggested by the guidelines, which would be a minimum of fifty-five months in prison, because of the fact that this is your first time that you have been in now, and I feel that after you serve your twenty-two months, if the Parole Board sees fit to parole you at that point, you will then have an opportunity to go forward. As I have indicated to the district attorney, had you had prior substantial incarceration sentences, and then came back for more, I would not have hesitated to impose the suggestive [sic] sentence by the guidelines. I feel, under the circumstances, that since you have not had prison before, and I think after twenty-two months, any person

who has an I.Q. of above four, and I think you do, should understand that it's not a nice place to go back to. I have imposed an extremely long probationary period. If you parolled [sic] some time after the twenty-two months, you'll have, between then and five years on parole, and you'll have then ten years of probation to me, okay, and I want you to understand that if you violate that probation, I can send you away for ten years, okay?

THE DEFENDANT: Yes.

*Id.* at 50–51[17]

 Thus, the sentencing court's reason for departing from the guidelines boiled down to his belief that appellee, who was never before incarcerated, would now "realize that maybe [prison is] not such a nice place to visit and [he] wouldn't want to live there after all ... and he now has something to compare his experience with." *Id.* at 42. Under the circumstances of this case, we do not find this explanation a persuasive one for such a substantial departure from the recommended sentence. "The Sentencing Code provides that 'the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b).' " *Commonwealth v. Dixon, supra,* 344 Pa.Super. at 310, 496 A.2d at 810. Our review of the record before us leads us to conclude that the sentencing court focused on the rehabilitative needs of appellee to the near exclusion of the other factors listed in section 9721(b). In so doing, the court unreasonably deviated from the guidelines and depreciated the seriousness of the offense, an offense which, as the sentencing court itself noted, was only "inches away" from homicide. Given the nature and circumstances of this offense, the characteristics of this appellee and the recommended range under the guidelines, we find the fact that

---

**17.** The court also mentioned Sister Henssans' testimony and letters of recommendation. The latter are not a part of the record.

appellee had never before been incarcerated an inadequate justification for such a lenient sentence. "In sum, only in exceptional cases and for sufficient reasons may a court deviate from the guidelines." *Commonwealth v. Hutchinson*, 343 Pa.Super. 596, 599, 495 A.2d 956, 958 (1985). Finding neither in the instant case, we are compelled to reverse.

In light of the foregoing, we must vacate and remand for resentencing. Jurisdiction is relinquished.