597 A.2d 1216

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey PATTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 17, 1990.

Filed Oct. 10, 1991.

---

Shelley Stark, Public Defender, Pittsburgh, for appellant.

Claire C. Capristo, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before CAVANAUGH, KELLY and FORD ELLIOTT, JJ.

KELLY, Judge:

In this appeal we are called upon to determine whether a prisoner's escape from a hospital to which he had been temporarily transferred for medical treatment, is an escape from a "treatment center" under the Sentencing Code. 204 Pa.Code §§ 303 *et seq.* We conclude that it is not and affirm judgment of sentence.

The relevant facts stipulated to at appellant's bench trial are as follows. Appellant, who was incarcerated awaiting trial on unrelated charges of robbery and kidnapping, was temporarily transported in shackles from county jail by a corrections officer to a hospital for x-rays. Appellant's shackles were removed to allow him to use the bathroom. When the corrections officer moved to make a phone call requesting transportation for himself and appellant back to the county jail, appellant fled the hospital grounds. A hospital security guard chased appellant, capturing him some five blocks from the hospital.

Following a recitation of these facts, the court convicted appellant of escape [1] and scheduled sentencing. Appellant was sentenced to forty (40) to eighty (80) months imprisonment, consecutive to any sentence he was then serving. Appellant filed a timely motion to modify sentence on April 9, 1990. Notice of appeal was then timely filed May 1, 1990.

On January 17, 1991, appellant filed a *pro se* supplemental brief with this Court. Pursuant to *Commonwealth v. Ellis,* 398 Pa.Super. 538, 581 A.2d 595 (1990) (*en banc*) this Court thereafter directed the prothonotary to forward to appellant's counsel a copy of appellant's *pro se* amendment to his counselled appeal. Since the supplemental brief raised no allegations of ineffectiveness or exhibited a desire to proceed *pro se,* counsel was ordered to examine it, determine if any of appellant's issues have merit, and, if necessary, file a supplemental brief within 14 days. *See*

1. 18 Pa.C.S.A. § 5121.

*Commonwealth v. Ellis, supra,* 398 Pa.Super. at 550, 581 A.2d at 600. As no further brief was filed, we will address only the brief filed by counsel.[2]

Counsel for appellant raises the following issue on appeal:

I. WAS COUNSEL INEFFECTIVE FOR FAILING TO OBJECT TO THE INCORRECT OFFENSE GRAVITY SCORE OR RAISE THIS ISSUE IN A MOTION TO RECONSIDER SENTENCE?

Appellant's Brief at 3.

 Initially, we note that appellant's underlying claim that the trial court used the incorrect gravity score is a challenge to the discretionary aspects of sentence. *Commonwealth v. Minott,* 395 Pa.Super. 552, 577 A.2d 928 (1990). He has complied with the procedural requirements of Pa.R.A.P. 2119(f). In determining whether to grant allowance of appeal, however, we must also determine whether appellant has presented for our consideration a substantial question as to whether the trial court's imposition of sentence compromised the sentencing code as a whole. *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Felix,* 372 Pa.Super. 145, 152, 539 A.2d 371, 374 (1988); *Commonwealth v. Darden,* 366 Pa.Super. 597, 603, 531 A.2d 1144, 1147 (1987); 42 Pa.C.S.A. 9781(b).

 Instantly, appellant argues that the sentencing court assigned an incorrect offense gravity score of 7 to his crime when determining his sentence. Appellant argues that his escape from a hospital should have been considered, under the guidelines, as an escape from a "treatment center." Since escapes from "treatment centers" receive a gravity score of only 6 under the guidelines, he concludes that the trial court abused its discretion. In support of this contention, appellant offers no case law or authority other than

2. We note, however, that cursory review of the claims appellant raises reveals them to be wholly without merit.

the superficial plausibility of the contention that for these purposes, the terms "treatment center" and "hospital" may be equated. Nonetheless, in view of the fact that the precise construction of the sentencing code has not been previously addressed in this context, we find that a substantial question has been presented and grant allowance of appeal.

In Pennsylvania, escapes while under arrest for, or detained on, a charge of a felony or following conviction of a crime are third degree felonies. 18 Pa.C.S.A. § 5121(d)(1). The Sentencing Code provides that an escape "from a half-way house, pre-release center, *treatment center*, work-release center, work-release, or by failing to return from an authorized leave or furlough" should be given an offense gravity score of 6. *See* 204 Pa.Code § 303.8 (emphasis added). All other escapes receive a gravity score of 7. *Id.*

It is true, as appellant suggests, that a hospital is in some sense a "center" for "treatment." Whether this broad definition of the term "treatment center" as used in the sentencing code is appropriate, however, is a different matter.

Viewing the term "treatment center" in the context in which it is used in the sentencing code lends light on the question. Under the sentencing code, the forms of confinement from which an individual may escape and receive a gravity score of 6, other than "treatment centers," are: half-way houses, pre-release centers, work-release centers, work-releases, and authorized leaves and furloughs. 204 Pa.Code § 303.8. These forms of confinement are low-level or partial confinement sentences imposed by the court at sentencing. Each are essentially rehabilitative in nature and each may be imposed only after the court has first had the opportunity to balance the rehabilitative needs of the offender against, *inter alia*, the incapacitative needs of society. 42 Pa.C.S.A. 9721(b) (confinement must be consistent with, *inter alia*, the protection of the public); *see also generally* 42 Pa.C.S.A. § 9755 (1991) (regulating the sentence of partial confinement). Where the court determines

the rehabilitative needs are high and the risk to the public posed by the offender at large is sufficiently low, such low-level or partial confinement settings may be appropriate.[3] Where, however, the offender is deemed likely to be dangerous, total confinement in a setting where the focus is on incapacitation for a given term will be deemed necessary.[4]

That the sentencing code has enumerated as grade 6 escape locations essentially rehabilitative low-level confinement settings which are unavailable to offenders who the court has not determined are sufficiently safe to the public is significant. It is this court's opinion that the purpose of distinguishing between escapes in the sentencing code was to suggest a lesser sentence only to escapees who have been determined, by a sentencing court, to be less dangerous to the public.[5] This common sense distinction simply

3. *See e.g. Commonwealth v. Melnyk,* 378 Pa.Super. 42, 53–54, 548 A.2d 266, 272 (1988) (Accelerated rehabilitative disposition program is appropriate for welfare fraud perpetrator).

4. *See e.g. Commonwealth v. House,* 371 Pa.Super. 23, 31, 537 A.2d 361, 365 (1988) (incarceration appropriate in view of *inter alia,* assault and robbery offender's "propensity for violence"); *Commonwealth v. Mattis,* 352 Pa.Super. 144, 153–54, 507 A.2d 423, 428 (1986) (sentence below guidelines which called for total confinement inappropriate in view of unreasonable violent nature of the offense, *i.e.* aggravated assault); *Commonwealth v. McCall,* 320 Pa.Super. 473, 482, 467 A.2d 631, (1983) (total confinement appropriate where offender "has committed violent offenses [rape, robbery, and burglary] and he will continue to do so and that when he is at liberty, the public is at hazard, in danger."); *Commonwealth v. Franklin,* 301 Pa.Super. 17, 30–31, 446 A.2d 1313, 1320 (1982) (sentence of total confinement appropriate for crime of aggravated assault); *see also generally* 42 Pa.C.S.A. § 9756 (regulating sentence of total confinement); Project, *A Description of Pre-release in Pennsylvania,* 20 Villanova L.Rev. 967, 993 (1974–1975) ("residents who represent any sort of security risk are not considered for any form of release"); *cf.* 42 Pa.C.S.A. § 9722(1), (2) (1991) (non-violent attributes of offender should be weighed in determining whether to grant parole).

5. Review of the commentary to the 1988 version of the guidelines supports this conclusion:

The commission changed the scores applicable to felony III escape [18 Pa.C.S. § 5121] effective January 2, 1986. This amendment subcategorizes escape based on the type of custody from which the defendant absconded. Generally, non-violent felony escapes from "low level" custody, such as work release, furlough, etc., receive a score of 6, while escapes with violence, or from secure facilities

reflects recognition of the fact that society has degrees of need to incapacitate a criminal depending on the degree of danger to the public the criminal poses. In this case, the sentencing code has distinguished two such degrees which are based upon the type and location of confinement under which the sentencing court has ordered the offender undergo.

Applying this conclusion instantly, it is clear that appellant's interpretation of the sentencing guidelines is flawed. Before his escape, appellant had been incarcerated in jail awaiting trial for robbery and kidnapping. Upon learning that appellant needed x-rays, prison officials shackled appellant and transported him to the hospital. The shackles were removed at the hospital for the sole purpose of facilitating the diagnosis. The reduced level of confinement was thus born of only *medical necessity.*[6] It was entirely unrelated to any court determination as to the danger appellant posed to the public. Whatever the *situs* of the escape, the type and location of the *confinement order*

continue to get the score of 7. Previously, all felony III escapes received a score of 7. Analysis of guideline sentence forms for this crime showed that judges frequently departed from the guidelines when the defendant simply "walked-off".
204 Pa.Code § 303.8, Commentary.

**6.** The authority for so transferring appellant for medical treatment may be found in 61 Pa.S.A. § 81 which provides in relevant part:

Whenever any convict or person is confined in any jail, workhouse, reformatory, or reform or industrial school, penitentiary, prison, house of correction or any other penal institution, under conviction or sentence of a court, or is so confined while awaiting trial or confined for any other reason or purpose and it is shown to a court of record by due proof that such convict or person is seriously ill, and that it is necessary that he or she be removed from such penal institution, the court shall have power to modify its sentence, impose a suitable sentence, or modify the order of confinement for trial, as the case may be, and provide for the confinement or care of such convict or person in some other suitable institution where proper *treatment* may be administered.

(Emphasis added). This statute simply authorizes the transfer of an accused or a prisoner to another facility to provide necessary treatment where such treatment is not available at the facility in which the prisoner is officially confined. As the statute expressly provides, however, *"upon the recovery of such person, the court shall recommit him or her to the institution from which he or she was removed." Id.*

which appellant was undergoing at the time of the escape remained that which had bound him into custody awaiting trial originally. This was an order of total confinement, unlike any type of confinement enumerated in the grade 6 offenses in the sentencing code. Thus, we conclude that where, as here, an offender escapes from a hospital to which he had only been temporarily transferred for medical treatment, the hospital may not be considered a "treatment center" under the sentencing code.[7]

7. We note that 35 Pa.S.A. § 780–118 provides in relevant part:
(a) If a person charged with a nonviolent crime claims to be drug dependent or a drug abuser and prior to trial he requests appropriate *treatment*, including but not limited to, admission or commitment under the Mental Health and Mental Retardation Act of 1966 in lieu of criminal prosecution, a physician experienced or trained in the field of drug dependency or drug abuse shall be appointed by the court to examine, if necessary, and to review the accused's record and advise the government attorney, the accused and the court in writing setting forth that for the *treatment* and rehabilitation of the accused it would be preferable for the criminal charges to be held in abeyance or withdrawn in order to institute treatment for drug dependence or for the criminal charges to be prosecuted. The government attorney shall exercise his discretion whether or not to accept the physician's recommendation.

\* \* \* \* \* \*

(f) If, after conviction, the defendant requests probation with *treatment* or civil commitment for *treatment* in lieu of criminal punishment the court may appoint a qualified physician to advise the court in writing whether it would be preferable for the purposes of *treatment* and rehabilitation for him to receive a suspended sentence and probation on the condition that he undergo education and *treatment* for drug abuse and drug dependency, or to be committed pursuant to the Mental Health and Mental Retardation Act of 1966 for *treatment* in lieu of criminal punishment, or to receive criminal incarceration. A copy of the physician's report shall be furnished to the court, the defendant and the government attorney. The court shall exercise its discretion whether to accept the physician's advice. 35 Pa.S.A. § 780–118(a)(f). This statute describes an example of a "treatment center" we believe the sentencing code drafters intended to include within the enumerated grade 6 locations of confinement. This statute authorizes a form of low-level or partial confinement which may be imposed "in lieu of criminal punishment." *Id; see also Commonwealth v. Kubiac,* 379 Pa.Super. 402, 413, 550 A.2d 219, 225 (1988); *Commonwealth v. Waters,* 361 Pa.Super. 154, 157, 522 A.2d 60, 63 (1987). *See also Commonwealth v. Conahan,* 527 Pa. 199, 589 A.2d 1107 (1991); Mental Health and Retardation Act, 50 Pa.S.A. 4401(c). Moreover, the nature of the offender determines the availability of such treatment. Only those *non-violent* offenders who may be appro-

Accordingly, we hold that the trial court did not err in its interpretation of the guidelines. Appellant's escape from a hospital herein was properly assigned a gravity score of 7, and counsel cannot be faulted for failing to object to the appropriate grading. *See Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989). Hence, appellant's claim on appeal must fail.

Judgment of sentence AFFIRMED.

CAVANAUGH, J., files a concurring opinion.

FORD ELLIOTT, J., concurs in the result of the majority opinion.

CAVANAUGH, Judge, concurring:

I concur in the analysis and result reached by Judge Kelly's opinion.

I note that appellant has filed a *pro se* amendment to the appeal. Because I believe that the supreme court mandates that this court consider issues raised in *pro se* filings in cases in which a counseled brief is filed, *see Commonwealth v. Gaerttner*, 518 Pa. 452, 543 A.2d 1091 (1988), I have examined the merits raised in the *pro se* filing and find them to be without merit.

For the above reasons, I concur in the affirmance of the judgment of sentence.

---

priately so confined may reap the benefits of such rehabilitative confinement. 35 Pa.S.A. § 780–118(a). Presumably, at least, such offenders pose less risk to the public and thus the severity of the escape from such a facility is considered less accordingly.